O’Connell, J.
 

 In these consolidated appeals, the prosecutors appeal from four lower court orders declaring that MCL 769.1; MSA 28.1072 (hereinafter § 1), as amended by 1996 PA 247, is unconstitutional. The amended statute requires the circuit court to sentence certain juvenile offenders as adults. We hold that the statute is constitutional, and we accordingly
 
 *139
 
 reverse the orders of the trial courts and remand for trial.
 

 I. LEGISLATIVE BACKGROUND
 

 Generally, the family division of the circuit court (family court) has exclusive jurisdiction over juveniles under seventeen years of age who commit criminal offenses. MCL 712A.1(1)(c); MSA 27.3178(598. 1)(1)(c), MCL 712A.2(a)(1); MSA 27.3178(598.2)(a)(1).
 
 [1]
 
 The “traditional-waiver” process allows the judge of the family court, on motion of the prosecutor, to waive jurisdiction over a juvenile at least fourteen years of age who “is accused of an act that if committed by an adult would be a felony . . . .” MCL 712A.4(1); MSA 27.3178(598.4)(1). In determining whether to waive jurisdiction so that the juvenile may be tried in the circuit court as an adult, the court must conduct a hearing to determine whether the best interests of the juvenile and the public would be served by granting a waiver of jurisdiction. MCL 712A.4(3) and (4); MSA 27.3178(598.4)(3) and (4). The judge must consider the following statutory factors: the seriousness of the alleged offense, the culpability of the juvenile, the prior record of the juvenile, the history of the juvenile in participating in available programs, the adequacy of both punishment and programs available in the juvenile system, and the dispositional options available for the juvenile. MCL 712A.4(4)(a) - (f); MSA 27.3178(598.4)(4)(a) - (f).
 

 
 *140
 
 Alternatively, an “automatic waiver” process exists whereby prosecutors may choose to “waive” certain juvenile offenders into the circuit court to be tried as adults. MCL 764.1f(l); MSA 28.860(6)(1) provides:
 

 If the prosecuting attorney has reason to believe that a juvenile 14 years of age or older but less than 17 years of age has committed a specified juvenile violation, the prosecuting attorney may authorize the filing of a complaint and warrant on the charge with a magistrate concerning the juvenile.
 

 A “specified juvenile violation” is defined as any of the following offenses:
 

 (1) arson of a dwelling, MCL 750.72; MSA 28.267;
 

 (2) assault with intent to commit murder, MCL 750.83; MSA 28.278;
 

 (3) assault with intent to maim, MCL 750.86; MSA 28.281;
 

 (4) assault with intent to rob and steal while armed, MCL 750.89; MSA 28.284;
 

 (5) attempted murder, MCL 750.91; MSA 28.286;
 

 (6) first-degree murder, MCL 750.316; MSA 28.548;
 

 (7) second-degree murder, MCL 750.317; MSA 28.549;
 

 (8) kidnapping, MCL 750.349; MSA 28.581;
 

 (9) first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2);
 

 (10) aimed robbery, MCL 750.529; MSA 28.797;
 

 (11) carjacking, MCL 750.529a; MSA 28.797(a);
 

 (12) bank, safe, or vault robbery, MCL 750.531; MSA 28.799;
 

 (13) assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, if armed with a dangerous weapon;
 

 
 *141
 
 (14) home invasion, MCL 750.110a; MSA 28.305(a), if armed with a dangerous weapon;
 

 (15) escape from certain higher-security juvenile facilities, MCL 750.186a; MSA 28.383a;
 

 (16) manufacture, delivery, or possession with intent to deliver over 650 grams of a controlled substance, MCL 333.7401(2)(a)(i); MSA 14.15(740l)(2)(a)(i);
 

 (17) possession of over 650 grams of a controlled substance, MCL 333.7403(2)(a)(i); MSA 14.15(7403)(2)(a)(i);
 

 (18) an attempt to commit, conspiracy to commit, or solicitation to commit any of the above offenses; and
 

 (19) any lesser-included offenses or other offenses arising out of the same transaction, if the juvenile is charged with one of the above offenses. See MCL 764.1f(2); MSA 28.860(6)(2).
 

 The circuit court is given jurisdiction over juveniles at least fourteen years of age who commit any of the “specified juvenile violations,” so that it may hear the automatic waiver cases where the prosecutor charges the juvenile as an adult. MCL 600.606; MSA 27A.606. Correspondingly, the normally exclusive jurisdiction of the family court over juveniles is limited in cases where a juvenile at least fourteen years of age is charged with any of the “specified juvenile violations,” so that the family court only has jurisdiction if the prosecutor chooses to file a petition in the family court instead of authorizing a complaint and warrant to proceed against the juvenile as an adult. MCL 712A.2(a)(1); MSA 27.3178(598.2)(a)(1). The effect of these automatic waiver provisions is that the prosecutor has discretion whether to charge a juvenile at
 
 *142
 
 least fourteen years of age who commits specified serious felonies as an adult or as a juvenile. Under the automatic waiver provisions, no hearing is held to determine whether the juvenile should be tried as an adult.
 

 Before 1996, MCL 769.1; MSA 28.1072 provided in part as follows:
 

 (3) A judge of a court having jurisdiction over a juvenile shall conduct a hearing at the juvenile’s sentencing to determine if the best interests of the juvenile and the public would be served by placing the juvenile on probation and committing the juvenile to a state institution or agency . . . or by imposing any other sentence provided by law for an adult offender.
 

 Thus, if the prosecutor charged a juvenile as an adult under the automatic waiver provisions and the juvenile was convicted, the circuit court was required to conduct a hearing to determine whether to sentence the juvenile as a juvenile or as an adult. The court was to consider various factors, set forth by § 1, such as the prior record and character of the juvenile, the seriousness of the offense, the juvenile’s potential for rehabilitation, and the dangerousness of the juvenile to the public.
 

 In 1996, the Legislature amended § 1 to require the circuit court to sentence juveniles convicted of certain offenses as adults. Subsection 1(1), MCL 769.1(1); MSA 28.1072(1), now provides in part as follows:
 

 A judge of a court having jurisdiction may pronounce judgment against and pass sentence upon a person convicted of an offense in that court. The sentence shall not exceed the sentence prescribed by law. The court shall sentence a juvenile convicted of any of the following crimes in the same manner as an adult:
 

 
 *143
 
 (a) Arson of a dwelling [MCL 750.72; MSA 28.267].
 

 (b) Assault with intent to commit murder [MCL 750.83; MSA 28.278],
 

 (c) Assault with intent to maim [MCL 750.86; MSA 28.281].
 

 (d) Attempted murder [MCL 750.91; MSA 28.286],
 

 (e) Conspiracy to commit murder [MCL 750.157a; MSA 28.354(1)].
 

 (f) Solicitation to commit murder [MCL 750.157b(2); MSA 28.354(2)(2)].
 

 (g) First degree murder [MCL 750.316; MSA 28.548],
 

 (h) Second degree murder [MCL 750.317; MSA 28.549].
 

 (i) Kidnapping [MCL 750.349; MSA 28.581],
 

 (j) First degree criminal sexual conduct [MCL 750.520b; MSA 28.788(2)].
 

 (k) Armed robbery [MCL 750.529; MSA 28.797],
 

 © Carjacking [MCL 750.529a; MSA 28.797(a)].
 

 Although every crime that requires an adult sentence is one of the “specified juvenile violations” for which a juvenile may be automatically waived into the circuit court by the prosecutor under MCL 764. If; MSA 28.860(6), not every “specified juvenile violation” requires an adult sentence under § 1. If an adult sentence is not required, the circuit court must conduct a hearing to determine whether to sentence the juvenile as a juvenile or as an adult. MCL 769.1(3); MSA 28.1072(3). The effect of the 1996 amendment is that, if the prosecutor charges a juvenile as an adult with one of the offenses for which an adult sentence is required, the prosecutor’s charging decision determines that the juvenile will face an adult sentence if convicted. Previously, the statute gave the circuit court discretion to determine whether the convicted juvenile would be sentenced as an adult.
 

 
 *144
 
 n. CONSOLIDATED CASES
 

 Defendants in these cases are all juveniles over fourteen years of age who have been charged as adults by the prosecutors under MCL 764. If; MSA 28.860(6). All four defendants have been charged with crimes that would require the circuit court to impose an adult sentence upon conviction under the amended version of § 1. Defendants Michael Conat and Stephen Raines are accused of murder, and defendants Sarah Plumb and Derek Schroeder are accused of armed robbery. Defendants’ motions for a determination that § 1 was unconstitutional were granted by the lower courts. The charge against defendant Raines was dismissed by the trial court on the basis of its determination that § 1 was unconstitutional. The prosecutor appealed as of right. This Court also granted leave to appeal in the other three cases. The cases have been consolidated for appeal. Because these cases present constitutional questions, our standard of review is de novo.
 
 People v Pitts,
 
 222 Mich App 260, 263; 564 NW2d 93 (1997).
 

 m. RIPENESS
 

 In
 
 People v Conat
 
 and
 
 People v Plumb,
 
 the prosecutors argue that the lower courts should not have held that § 1 is unconstitutional because the issue was not ripe. The prosecutors argue that the issue was not ripe because defendants had not yet been convicted and therefore were not yet subject to the adult sentences mandated by § 1.
 

 Judicial power includes the authority to hear and decide controversies.
 
 Johnson v Kramer Bros Freight Lines, Inc,
 
 357 Mich 254, 258; 98 NW2d 586 (1959),
 
 *145
 
 quoting
 
 Risser v Hoyt,
 
 53 Mich 185, 193; 18 NW 611 (1884). “Courts ordinarily will not decide a case or question, in or on which there is no real controversy.”
 
 Johnson v Muskegon Heights,
 
 330 Mich 631, 633; 48 NW2d 194 (1951). Thus, an issue generally will not be reviewed if it does not reflect an actual, existing controversy, but merely a potential one.
 
 United Public Workers of America v Mitchell,
 
 330 US 75, 89-90; 67 S Ct 556; 91 L Ed 754 (1947). See also
 
 Kelvinator, Inc v Dep’t of Treasury,
 
 136 Mich App 218, 234; 355 NW2d 889 (1984) (holding that, where the petitioners’ claim was based on the stated policy position of the respondent, the issue was not subject to review until that policy was implemented in a concrete case). An actual controversy exists if a party faces a real and immediate threat to the party’s interests, as opposed to a hypothetical one.
 
 Los Angeles v Lyons,
 
 461 US 95, 101-102; 103 S Ct 1660; 75 L Ed 2d 675 (1983);
 
 Dep’t of Social Services v Emmanuel Baptist Preschool,
 
 434 Mich 380, 410; 455 NW2d 1 (1990) (Cavanagh, J.).
 

 These cases present an actual controversy involving whether § 1 is unconstitutional. The prosecutors acknowledge that this issue is ripe with respect to defendant Schroeder, who entered a plea of no contest pursuant to
 
 People v Cobbs,
 
 443 Mich 276; 505 NW2d 208 (1993), in reliance on the trial court’s indication that it would sentence him as a juvenile. Additionally, an actual controversy exists with respect to all three other defendants because they have been charged as adults by the prosecutors and face adult sentences upon conviction. Defendants face a real and immediate threat, not merely a hypothetical or speculative one, and the lower courts were correct to
 
 *146
 
 reach the merits of defendants’ claims that § 1 is unconstitutional.
 

 IV. SEPARATION OF POWERS
 

 The prosecutors argue that the lower courts erred in finding that § 1 violates the doctrine of separation of powers. We agree.
 

 The separation of powers doctrine is set forth in Const 1963, art 3, § 2 as follows:
 

 The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.
 

 This does not mean, however, that all three branches must be kept completely separate, with no overlap of functions or powers.
 
 Judicial Attorneys Ass’n v Michigan,
 
 459 Mich 291, 296; 586 NW2d 894 (1998);
 
 Soap & Detergent Ass’n v Natural Resources Comm,
 
 415 Mich 728, 751-752; 330 NW2d 346 (1982). Rather, the evil to be avoided is the accumulation in one branch of the powers belonging to another. Thus, the impetus behind the separation of powers doctrine is that “ ‘where the
 
 whole
 
 power of one department is exercised by the same hands which possess the
 
 whole
 
 power of another department, the fundamental principles of a free constitution are subverted.’ ”
 
 Soap & Detergent, supra
 
 at 752, quoting The Federalist No. 47 (J. Madison) (emphasis in original).
 

 The trial courts held, and defendants argue, that § 1 violates the separation of powers doctrine because it gives prosecutors the power to determine whether a juvenile or an adult sentence is imposed on certain
 
 *147
 
 juvenile offenders, thus impermissibly giving prosecutors sentencing discretion that properly belongs to the judiciary. However, this argument ignores the commonplace interaction between all three branches of government in determining what punishment is given to criminal offenders; namely, that the Legislature defines the sentences, the court fashions and imposes individual sentences within the legislatively defined parameters, and the prosecutor brings charges against defendants that inevitably affect which sentences are available for the court to impose.
 

 The judicial power to hear and determine controversies includes the power to exercise discretion in imposing sentences.
 
 People v Raihala,
 
 199 Mich App 577, 579; 502 NW2d 755 (1993), quoting
 
 In re Southard,
 
 298 Mich 75, 81; 298 NW 457 (1941). However, this sentencing discretion is limited by the Legislature, which has the power to establish sentences.
 
 People v Hall,
 
 396 Mich 650, 658; 242 NW2d 377 (1976). For example, the Legislature may set a minimum and a maximum sentence for a particular offense. Courts have no sentencing discretion “unless it be conferred upon them by law.”
 
 People v Palm,
 
 245 Mich 396, 404; 223 NW 67 (1929). In other words, the Legislature has the exclusive power to determine the sentence prescribed by law for a crime, and the function of the court is “only to impose [a] sentence under and in accord with the statute.”
 
 In re Callahan,
 
 348 Mich 77, 80; 81 NW2d 669 (1957). See also
 
 In re Doelle,
 
 323 Mich 241, 245; 35 NW2d 251 (1948) (“The length of imprisonment for a specific felony is a matter for legislative determination . . . .”). “While the power to set the range of punishment for a given offense is legislative, bringing that statutory range of
 
 *148
 
 discretion to bear upon an individual defendant in the form of a sentence has been confided to the judiciary.”
 
 People v Pulley,
 
 411 Mich 523, 528; 309 NW2d 170 (1981). For example, no violation of the separation of powers doctrine results from the Legislature’s requiring a mandatory life sentence without the possibility of parole for first-degree murder.
 
 Hall, supra
 
 at 657-658. Such a sentence clearly limits the sentencing discretion of the court. Likewise, § 1 is a permissible legislative limitation on the sentencing discretion of courts, requiring that if a juvenile defendant is convicted in the circuit court of certain offenses, the court must impose an adult sentence. The court is still vested with the discretion to fashion an appropriate sentence as prescribed by law for the specific offense.
 

 Defendants argue, however, that § 1 does more than limit judicial sentencing discretion. They argue that, in effect, § 1 impermissibly gives that discretion to prosecutors because the prosecutor, alone, under MCL 764.If; MSA 28.860(6), chooses whether to charge the offender as a juvenile or as an adult, thus determining whether the offender will receive an adult sentence if convicted. However, § 1 does not give sentencing discretion to prosecutors, but instead provides that “[t]he
 
 court
 
 shall sentence a juvenile . . . .” (Emphasis added.) The court still retains its judicial function of imposing a sentence as prescribed by law; the prosecutor does not impose the sentence.
 

 Furthermore, the argument that § 1 gives prosecutors sentencing discretion ignores the inevitable sentencing effect that results from the everyday exercise of prosecutorial charging discretion. Prosecutorial charging decisions always affect the sentence that a
 
 *149
 
 court may impose; this does not violate the separation of powers doctrine. It is well settled that “the decision whether to bring a charge and what charge to bring lies in the discretion of the prosecutor.”
 
 People v Venticinque,
 
 459 Mich 90, 100; 586 NW2d 732 (1998). Prosecutors must often choose among various applicable criminal statutes in deciding which charges to bring against a defendant. Indeed, the prosecutor is a constitutional officer entrusted with performing the executive function of bringing criminal charges against defendants. See
 
 Genesee Prosecutor v Genesee Circuit Judge,
 
 386 Mich 672, 683-684; 194 NW2d 693 (1972);
 
 People v Siebert,
 
 450 Mich 500, 510; 537 NW2d 891 (1995) (Boyle, J.) (noting that the prosecutor “is constitutionally entrusted with authority to charge defendants”). This is grounded in the responsibility of the executive branch to enforce the laws. See US Const, art II, § 3 (requiring the President to “take Care that the Laws be faithfully executed”). The prosecutor is given broad charging discretion,
 
 Genesee Prosecutor, supra
 
 at 683, and judicial review of the exercise of that discretion is limited to whether an abuse of power occurred, i.e., whether the charging decision was made for reasons that are unconstitutional, illegal, or ultra vires.
 
 People v Barksdale,
 
 219 Mich App 484, 488; 556 NW2d 521 (1996).
 

 The exercise of the prosecutor’s charging discretion routinely affects the sentence that the court may impose upon conviction. For example, if the prosecutor charges a defendant with first-degree murder, the court must impose a sentence of life imprisonment without the possibility of parole if the defendant is convicted. However, the prosecutor could choose to charge that same defendant with a lesser offense, in
 
 *150
 
 which case the court could impose a lower sentence upon conviction. The prosecutor could even choose not to charge the defendant with any crime whatsoever. These decisions do not offend notions of separation of powers, but are merely instances of the executive branch, through the office of the prosecutor, exercising its power to enforce the laws by bringing criminal charges against offenders. This power is not without checks and balances, for the magistrate must determine at the preliminary examination that probable cause exists to believe that the defendant committed the charged offense, and the trier of fact must determine at trial whether the defendant is guilty beyond a reasonable doubt of the charged offense.
 

 The doctrine of separation of powers is not violated where prosecutors are given the authority to decide which crimes to charge a defendant with and where this decision affects the severity of punishment imposed if the defendant is convicted. The United States Supreme Court held in
 
 United States v Batchelder,
 
 442 US 114; 99 S Ct 2198; 60 L Ed 2d 755 (1979), that by choosing to charge a defendant under a statute that provided a greater penalty than did another applicable statute, the prosecutor did not “predetermine ultimate criminal sanctions.”
 
 Id.
 
 at 125. Rather, that decision “merely enable[d] the sentencing judge to impose a longer prison sentence . . .
 
 .'"Id.
 
 The Court was faced with two criminal statutes with identical elements that provided for different penalties, and it rejected the argument that this violated the separation of powers doctrine by impermissibly delegating legislative responsibility to set penalties to the executive branch.
 
 Id.
 
 at 125-126. The Court held that any power delegated to the executive branch to
 
 *151
 
 choose which statute to charge a defendant with was “no broader than the authority [prosecutors] routinely exercise in enforcing the criminal laws.”
 
 Id.
 
 at 126. Likewise, although the prosecutor’s decision to charge a juvenile who commits certain crimes as an adult will result in the imposition of an adult sentence upon conviction, the prosecutor does not thereby predetermine the criminal sanction imposed. Rather, the prosecutor’s decision merely affects the sentencing options available to the court if the defendant is convicted. Furthermore, although the prosecutor’s decision regarding which crime to charge the juvenile with will also affect the sentencing options available to the court, defendants do not claim that this violates the separation of powers doctrine. Under the amended automatic waiver statutes, the exercise of prosecutorial charging discretion requires the prosecutor to decide what crime to charge a juvenile with and whether to charge the juvenile as an adult. Although the exercise of that discretion will, in some instances, determine whether the juvenile will receive an adult sentence if convicted, the doctrine of separation of powers is not violated.
 

 This Court has previously upheld MCL 764. If; MSA 28.860(6), the automatic waiver provision allowing the prosecutor to charge certain juvenile offenders as adults, against a separation of powers challenge. In
 
 People v Black,
 
 203 Mich App 428; 513 NW2d 152 (1994), this Court held that this provision did not give prosecutors judicial power. The panel held that, while the statute allowed prosecutors to choose whether to proceed against a defendant as an adult in the circuit court or as a juvenile in the probate court (now the family court), “all judicial power continues
 
 *152
 
 to be exercised by the judiciary.”
 
 Id.
 
 at 430. Although
 
 Black
 
 was decided when § 1 required the circuit court to hold a hearing to determine whether to sentence the juvenile as an adult, the separation of powers analysis remains the same. Under the amended version of § 1, the prosecutor’s options are no different. The only difference effected by the amendment is that the Legislature has limited the sentencing discretion of the court so that, for certain serious felonies, the court must impose an adult sentence. All judicial power to hear and determine controversies and impose a sentence within the bounds of the sentencing discretion given by the Legislature continues to be exercised by the court, not the prosecutor.
 

 Therefore, we hold that § 1 does not violate Const 1963, art 3, § 2, because it does not offend the doctrine of separation of powers. Under the amended automatic waiver process, the roles of the three branches of government remain the same as before the amendment. The prosecutor has the same discretion as before—whether to charge a particular juvenile at all, what crime to charge the juvenile with, and whether to charge the juvenile as an adult. Under the amended § 1, as before, the court is authorized to impose a sentence on the juvenile upon conviction. The Legislature exercised its power to set sentences when it amended § 1 to require the court to sentence juveniles as adults when convicted of certain felonies. That the prosecutor’s charging decision has an effect on the sentence that the court may impose is undeniable; this is an inevitable effect of the exercise of prosecutorial discretion and does not offend the separation of powers doctrine. The roles of all three branches of government remain intact: the executive
 
 *153
 
 branch still makes the charging decision, the legislative branch still sets the available sentences, and the judiciary still fashions an individual sentence within the sentencing discretion given it by the legislative branch.
 

 V. EQUAL PROTECTION
 

 The prosecutors also argue that the lower courts erred in finding that § 1 violates federal and state guarantees of equal protection. We agree.
 

 Equal protection of the law is guaranteed by both the United States and Michigan Constitutions. US Const, Am XIV, § 1; Const 1963, art 1, § 2. The state constitutional guarantee provides no greater protection than does its federal counterpart.
 
 Moore v Spangler,
 
 401 Mich 360, 370; 258 NW2d 34 (1977);
 
 Doe v Dep’t of Social Services,
 
 439 Mich 650, 670-674; 487 NW2d 166 (1992);
 
 Harville v State Plumbing & Heating, Inc,
 
 218 Mich App 302, 310; 553 NW2d 377 (1996). The constitutional guarantee of equal protection requires that the government treat similarly situated persons alike.
 
 El Souri v Dep’t of Social Services,
 
 429 Mich 203, 207; 414 NW2d 679 (1987), quoting
 
 F S Royster Guano Co v Virginia,
 
 253 US 412, 415; 40 S Ct 560; 64 L Ed 989 (1920). The party challenging the statute must demonstrate that it evidences intentional discrimination against a particular group of persons.
 
 Harville, supra
 
 at 306-309. Where, as in the instant case, the different treatment is not based on a suspect classification, such as race or ethnicity, and does not impinge on the exercise of a fundamental right, rational basis scrutiny applies.
 
 Doe, supra
 
 at 662;
 
 Yaldo v North Pointe Ins Co,
 
 457 Mich 341, 349; 578 NW2d 274 (1998). Under rational basis scrutiny,
 
 *154
 
 “the challenged statute will be upheld if it furthers a legitimate governmental interest and if the classification is rationally related to achieving the interest.”
 
 Id.
 
 at 349. This is a deferential standard, for we presume the statute to be constitutional,
 
 Doe, supra
 
 at 662, and the party challenging the statute has the burden of demonstrating that the classification is arbitrary and irrational.
 
 Yaldo, supra
 
 at 349.
 

 The challenged statutory system provides that juveniles at least fourteen years of age who commit enumerated serious felonies may be subjected to prosecution as adults in the circuit court and, if convicted, face sentencing as adults. Defendants do not argue that the statutory system intentionally discriminates against a particular group of juveniles, but only that the prosecutors’ charging decisions will result in some juveniles being charged and sentenced differently from others. Therefore, because no intentional discrimination has been demonstrated, we cannot conclude that the statutory system violates equal protection.
 
 Harville, supra
 
 at 311. Moreover, the lower courts’ rulings that § 1 is unconstitutional were not limited to the application of § 1 to the present defendants. We note that in order to find that a statute is not only unconstitutional as applied, but is facially unconstitutional, the party challenging the statute “ ‘must establish that no set of circumstances exists under which the [statute] would be valid. The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient . . . .’”
 
 Council of Organizations and Others for Ed About Parochiaid, Inc v Governor,
 
 455 Mich 557, 568; 566 NW2d 208 (1997), quoting
 
 United States v Salerno,
 
 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d
 
 *155
 
 697 (1987). In this case, defendants failed to demonstrate that the statutory system will always result in purposeful discrimination. We conclude that defendants did not meet this heavy burden of overcoming the presumption of constitutionality, and the lower courts therefore erred in finding that § 1 violated the constitutional guarantees of equal protection.
 

 Furthermore, defendants’ challenge to § 1 is essentially a challenge to prosecutorial charging discretion. Defendants do not complain of the classification created by the statutory automatic waiver process itself—juveniles at least fourteen years of age who commit enumerated crimes as opposed to juveniles in the same age group who commit different crimes or juveniles under fourteen years of age who commit the same crimes—but rather of the classification that results from the exercise of prosecutorial discretion regarding whether to charge as adults certain juveniles at least fourteen years of age who commit enumerated crimes. Both the lower courts and defendants note the two classes created by the statutory system as follows: (1) juveniles at least fourteen years of age accused of enumerated serious felonies who are charged and sentenced as juveniles on the basis of the decision of the prosecutor, and (2) juveniles at least fourteen years of age accused of the same crimes who are charged and sentenced as adults on the basis of the decision of the prosecutor. Therefore, the alleged equal protection violation results from the exercise of prosecutorial charging discretion.
 

 However, in order to successfully claim that the exercise of prosecutorial charging discretion constitutes a violation of equal protection guarantees, a
 
 *156
 
 defendant must demonstrate that the prosecutor singled out certain defendants for prosecution while not charging others similarly situated who committed the same crime and that this decision was based on impermissible factors such as race, sex, religion, or the exercise of a fundamental right.
 
 People v Maxson,
 
 181 Mich App 133, 135; 449 NW2d 422 (1989), quoting
 
 People v
 
 Ford, 417 Mich 66, 102; 331 NW2d 878 (1982). Therefore, in order to hold that the exercise of prosecutorial charging discretion through the automatic waiver process violates equal protection, it must be demonstrated that the prosecutor, on the basis of impermissible factors, decided to charge as adults certain juveniles who committed certain crimes and to charge as juveniles other juveniles who committed the same crimes. Defendants have made no such showing, but merely assert that because the prosecutor may arbitrarily exercise charging discretion in this area, the statutory system granting the prosecutor that discretion violates equal protection. In order to accept defendants’ argument, we would be required to abandon the notion of prosecutorial charging discretion entirely. If we accepted defendants’ argument, presumably an equal protection violation would result from a prosecutor’s charging one thirty-year-old person with felonious assault, MCL 750.82(1); MSA 28.277(1), a felony prosecuted in the circuit court, while charging another thirty-year-old person who committed a similar act with simple assault, MCL 750.81(1); MSA 28.276(1), a misdemeanor prosecuted in the district court. Without a showing of intentional discrimination based on impermissible factors, the mere fact that some persons are charged differently from others for the same conduct
 
 *157
 
 does not violate equal protection.
 
 Maxson, supra
 
 at 134-135. Furthermore, to the extent that defendants’ argument is based on the effect the prosecutor’s decision has on the sentencing options available to the court, we again note that prosecutorial charging decisions always affect sentencing options without offending the constitutional doctrine of separation of powers.
 

 We therefore hold that the statutory system for automatic waiver does not violate federal and state guarantees of equal protection.
 

 VI. DUE PROCESS
 

 In
 
 People v Schroeder,
 
 the trial court held that § 1 violated the constitutional right to due process. The prosecutor argues that this was error. Again, we agree.
 

 Both the United States and Michigan Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law. US Const, Am XIV, § 1; Const 1963, art 1, § 17. Michigan’s due process guarantee provides no greater protection than does the federal due process guarantee.
 
 Syntex Laboratories v Dep’t of Treasury,
 
 233 Mich App 286, 292; 590 NW2d 612 (1998).
 

 Defendants argue that § 1 violates the right to due process because juveniles at least fourteen years of age convicted of certain crimes after being charged as an adult face adult sentences without the benefit of a hearing to determine whether they should be sentenced as an adult or as a juvenile. Before § 1 was amended, a juvenile sentencing hearing was always held; after the amendment, the circuit court is
 
 *158
 
 required to sentence juveniles as adults if they are convicted of any of the enumerated serious felonies. However, defendants failed to demonstrate that the procedures afforded before § 1 was amended were constitutionally required. We conclude that, because the entire juvenile justice system is a legislatively created system, the mere fact that legislatively mandated procedures are legislatively altered does not necessarily result in a violation of the right to due process.
 

 There is no constitutional right to be treated as a juvenile.
 
 People v Hana,
 
 443 Mich 202, 220; 504 NW2d 166 (1993). Our Supreme Court recently discussed the history of juvenile justice in the United States and in Michigan, noting that, at common law, juveniles at least fourteen years of age were presumed to be capable of forming criminal intent and were subject to the same criminal penalties as adults.
 
 Id.
 
 at 209-210. In 1905, Michigan first provided for a separate process, in the probate court, for juvenile offenders.
 
 Id.
 
 at 213. However, by 1939, a process was implemented to waive jurisdiction over juveniles who committed felonies punishable by more than five years’ imprisonment.
 
 Id.
 
 at 214. Legislation granting the prosecutor the discretion to automatically waive certain juvenile offenders into the circuit court was passed in 1988.
 
 Id.
 
 The legislative intent behind the automatic waiver process was “to treat juvenile offenders who engage in serious criminal activity more harshly by providing adult penalties for certain crimes.”
 
 People v Veling,
 
 443 Mich 23, 27; 504 NW2d 456 (1993). See also
 
 People v Valentin,
 
 457 Mich 1, 6; 577 NW2d 73 (1998). The 1996 amendment of the automatic waiver system was designed to more effectively accomplish this intent. See, generally, House Legislative Analysis, HB
 
 *159
 
 4037 et al., July 22, 1996. Because juveniles have no constitutional right to be treated differently from adults when they engage in criminal conduct, and because without the legislatively created juvenile justice system all juveniles at least fourteen years of age would be subject to adult criminal penalties, we conclude that the amended automatic waiver system does not deny juveniles the constitutional right to due process.
 

 Defendants argue that, according to the United States Supreme Court in
 
 Kent v United
 
 States, 383 US 541; 86 S Ct 1045; 16 L Ed 2d 84 (1966), due process requires a hearing before trying and sentencing a juvenile as an adult. Therefore, defendants argue that the amended automatic waiver system is unconstitutional because it places the decision whether to try and sentence juveniles as adults solely within the discretion of the prosecutor, without any hearing or any standards. However, the Court in
 
 Kent
 
 did not hold that a hearing was required under an automatic waiver system; rather, it held that, where the federal statute allowed the juvenile court to waive its exclusive jurisdiction over a juvenile offender after the court made a full investigation, due process required that the court hold a hearing before waiving jurisdiction.
 
 Id.
 
 at 547-548, 553, 561-562. The Court was not faced with the question whether such a hearing would be required under an automatic waiver system, where the prosecutor decides whether to charge the juvenile as an adult. Therefore, defendants’ reliance on
 
 Kent
 
 is inapposite.
 

 Defendants also argue that, in rejecting a due process challenge to the automatic waiver system before the 1996 amendment of § 1, this Court upheld the
 
 *160
 
 automatic waiver system because a juvenile sentencing hearing was required, which satisfied the requirements of due process.
 
 People v
 
 Parrish, 216 Mich App 178; 549 NW2d 32 (1996). However, the panel in
 
 Parrish
 
 was addressing a claim that the automatic waiver system then existing violated the right to due process because it did not afford the same procedural protections as did the traditional waiver system. The panel concluded that, because a sentencing hearing was held to decide whether to sentence the juvenile as an adult, the automatic waiver system afforded procedures similar to those under the traditional waiver system, which required a hearing to decide whether the juvenile should be tried as an adult.
 
 Id.
 
 at 182-183. Therefore, because both systems provided substantially the same procedural protections, the panel rejected the defendant’s claim that the automatic waiver system was unconstitutional because it did not provide the same procedural protections as did the traditional waiver system.
 
 Id.
 
 at 184. Importantly, the panel did not hold that such procedures were constitutionally required, and even noted that there is no constitutional right to be treated as a juvenile.
 
 Id.
 
 at 182. Rather, the panel held only that because both systems provided similar procedures, the defendant’s due process challenge based on the allegedly different procedures of the two systems was without merit. Thus, defendants’ reliance on
 
 Parrish
 
 is also misplaced.
 

 Defendants essentially argue that, because the amended automatic waiver system removes in some cases the prior procedural requirement of a juvenile sentencing hearing, due process is denied to juveniles who commit the enumerated serious felonies that
 
 *161
 
 now require adult sentences if the juvenile is charged and convicted as an adult. However, that the Legislature previously required certain procedures before sentencing a juvenile as an adult does not necessarily elevate those procedures to constitutional rights. The juvenile justice system is legislatively created, and the alteration of statutory procedures in this case does not constitute a denial of the right to due process. As noted above, the Legislature has exercised its power to limit the sentencing discretion of the circuit court in sentencing juveniles who are convicted of serious felonies. The removal of this sentencing discretion by requiring the court to sentence such juveniles as adults does not deny those juveniles due process. Juveniles are afforded the same due process protections during trial as adults, such as the presumption of innocence and the right to a jury trial. Furthermore, the exercise of prosecutorial charging discretion does not require a hearing. No defendant has the right to a hearing before the prosecutor decides what charges to bring against the defendant. We therefore conclude that the trial court erred in holding that § 1 violates the constitutional right to due process.
 

 To the extent that defendants’ argument is based on the lack of standards to govern the prosecutor’s decision whether to charge a particular juvenile as an adult, we note that our Supreme Court has held that a lack of standards to govern the exercise of prosecutorial charging discretion does not, in itself, violate the right to due process.
 
 Ford, supra
 
 at 97, 99. Also, this argument is essentially defendants’ equal protection argument in another guise.
 

 
 *162
 
 vn. CONFLICT WITH MCR 6.931
 

 We also conclude that the lower courts erred in finding that § 1 is unconstitutional because it directly conflicts with a court rule governing matters of practice and procedure.
 

 MCR 6.931 provides that, when a juvenile is convicted in the circuit court, a hearing is required to determine whether to sentence the offender as an adult or as a juvenile. Defendants correctly note that § 1, mandating that the circuit court sentence a juvenile convicted of any of the enumerated serious felonies as an adult, without a hearing, directly conflicts with MCR 6.931. However, the prosecutors also correctly note that the court rules governing juvenile proceedings in the circuit court found in MCR sub-chapter 6.900 were promulgated by the Supreme Court in response to legislation allowing for automatic waiver into the circuit court for certain crimes. See staff comment on MCR subchapter 6.900, R 6.9-9. MCR 6.931, then, was promulgated to conform with legislation requiring that the circuit court hold a juvenile sentencing hearing upon conviction to determine whether to sentence the juvenile offender as an adult.
 
 Id.
 
 With this in mind, we turn to the task of resolving this conflict between the statute and the court rule.
 

 We conclude that, although MCR 6.931 and § 1 are in direct conflict, § 1 is not an unconstitutional infringement on the Supreme Court’s rulemaking authority because § 1 is substantive rather than procedural. Under Const 1963, art 6, § 5, the Supreme Court is given the exclusive rulemaking authority in matters of practice and procedure.
 
 McDougall v
 
 Schanz, 461 Mich 15, 26; 597 NW2d 148 (1999). However, the Court “is not authorized to enact court rules
 
 *163
 
 that establish, abrogate, or modify the substantive law.”
 
 Id.
 
 at 27. Accordingly, “[i]n resolving a conflict between a statute and a court rule, the court rule prevails if it governs practice and procedure.”
 
 People v
 
 Strong, 213 Mich App 107, 112; 539 NW2d 736 (1995). However, if the statute does not address purely procedural matters, but substantive law, the statute prevails.
 
 McDougall, supra
 
 at 37.
 

 In
 
 McDougall,
 
 the Supreme Court held that a statutory evidentiary rule restricting the admissibility of expert opinions in certain medical malpractice cases did not impermissibly infringe on the Supreme Court’s constitutional rulemaking authority over practice and procedure, even though the statute directly conflicted with a court rule of evidence.
 
 Id.
 
 The Court concluded that the statute was an enactment of substantive law, reflecting “wide-ranging and substantial policy considerations relating to medical malpractice actions against specialists.”
 
 Id.
 
 at 35. Therefore, the statute, not the court rule, governed. Likewise, § 1 in the instant case involves substantive policy considerations regarding juvenile crime and how to punish juveniles who commit serious crimes. The legislative intent behind the automatic waiver system was to require more severe punishment for juveniles who commit serious crimes, and § 1 was designed to further this legislative intent. See, e.g.,
 
 Veling, supra
 
 at 27;
 
 Valentin, supra
 
 at 6; House Legislative Analysis, HB 4037 et al., July 22, 1996. Thus, § 1 reflects a substantive policy choice by the Legislature and, although directly conflicting with MCR 6.931, does not infringe on the Supreme Court’s procedural rulemaking authority.
 

 
 *164
 
 Although MCR 6.001 specifically notes that the court rules contained in subchapter 6.900 govern matters of procedure and supersede any statutory procedure inconsistent with those rules, this alone does not render the question whether a juvenile sentencing hearing should be conducted to determine whether to sentence a juvenile as an adult a procedural issue. As noted above, the staff comment to those court rules indicates that they were enacted in response to legislation. We conclude that the court rules contained in MCR subchapter 6.900 were intended to govern procedures designed to implement legislative policy choices regarding juvenile crime. The Legislature was clearly concerned about substantive issues regarding juvenile crime, and § 1 reflects a legislative policy decision. Accordingly, we hold that § 1 does not unconstitutionally infringe on the Supreme Court’s rulemaking authority and that where § 1 and MCR 6.931 directly conflict regarding whether a juvenile sentencing hearing is required, § 1 prevails because it is a matter of substantive law.
 

 vni. CONCLUSION
 

 In summary, we conclude that the constitutional questions presented are ripe for review and that the lower courts erred in holding that § 1 was unconstitutional. The Legislature’s decision to require adult sentences for certain juvenile offenders was one of policy. We may not substitute our judgment for that of the Legislature in this matter.
 
 Ecorse v Peoples Community Hosp Authority,
 
 336 Mich 490, 500; 58 NW2d 159 (1953). “[Arguments that a statute is unwise or results in bad policy should be addressed to the Legislature.”
 
 People v Kirby,
 
 440 Mich 485, 493-494; 487
 
 *165
 
 NW2d 404 (1992). The issue before this Court is not whether the amended automatic waiver system is wise or results in good policy; rather, our inquiry is strictly limited to whether it is unconstitutional. We conclude that it is not. Accordingly, we reverse the lower courts’ orders finding § 1 unconstitutional, and we remand these cases for trial. We again note that defendant Schroeder entered a
 
 Cobbs
 
 plea of no contest in reliance on the trial court’s indication that he would be sentenced as a juvenile. In light of our holding, under which the trial court would be required to sentence him as an adult if convicted, we direct the trial court to allow defendant Schroeder to withdraw his plea of no contest.
 

 Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
 

 R.J. Danhof, J., concurred.
 

 Hoekstra, P.J.
 

 I agree with the majority’s analysis, but write separately to explain why I reject defendants’ argument that MCL 769.1; MSA 28.1072 violates Const 1963, art 3, § 2, the provision providing for separation of powers among the three branches of Michigan’s government.
 

 The majority frames the argument in terms of the balance of power between the prosecutor, a member of the executive branch, and the judiciary. Fundamentally, however, this is a jurisdictional question and should be analyzed in terms of the Legislature’s power to bestow and withhold jurisdiction. The Michigan Constitution provides for a probate court with original jurisdiction over juvenile cases, “except as otherwise provided by law.” Const 1963, art 6, § 15.
 
 *166
 
 The convention comment following this provision states, in pertinent part:
 

 The probate court continues to have original jurisdiction in all cases involving juvenile delinquents and dependent juveniles, unless otherwise provided by law. This will permit the legislature greater flexibility in the future in determining the best method within our court system for the handling of juvenile matters, including the possibility of creating a family court.
 

 According to the Michigan Constitution, therefore, the Legislature determines which courts have jurisdiction over juvenile defendants. See
 
 In re Wirsing,
 
 456 Mich 467, 472; 573 NW2d 51 (1998) (the jurisdiction of the probate court is defined entirely by statute). Nothing in art 6, § 15 prevents the Legislature from granting jurisdiction over juveniles who commit certain enumerated crimes to other courts, nor does it prohibit the creation of concurrent jurisdiction over certain offenses. Indeed, the Legislature recently withdrew jurisdiction from the juvenile division of the probate court and gave it to the newly created family division of the circuit court. MCL 712A.1; MSA 27.3178(598.1) (as amended by 1996 PA 409).
 

 For policy reasons properly left to the Legislature, the circuit courts and family courts have concurrent jurisdiction over certain juvenile defendants. The statute in question, MCL 769.1; MSA 28.1072, provides that, for certain crimes, the circuit court must sentence its juvenile defendants as adults. As noted by the majority, however, the Legislature has the power to prescribe sentencing options for various offenses, and the power to sentence any given juvenile defendant, within those legislatively prescribed limits, remains with the trial court. This statutory scheme
 
 *167
 
 provides the prosecutor a choice of jurisdictions, but that is all. Although that choice can have de facto sentencing consequences, it is fundamentally a jurisdictional decision.
 

 Absent some showing that this constitutionally permissible exercise of power has yielded an unconstitutional result, I can find no fault with the Legislature’s decision to create courts of concurrent jurisdiction. To the extent that the de facto sentencing consequences turn this issue into one concerning the proper allocation of sentencing power, I agree with the majority’s conclusion that the prosecutor’s choice to proceed in the circuit court more closely resembles the decision regarding how the defendant will be charged; therefore, it does not invade the trial court’s constitutional role in fashioning a defendant’s sentence. However, with regard to the issue whether MCL 769.1; MSA 28.1072 violates art 3, § 2, I maintain that it is enough that we simply recognize that the Legislature has the power to create concurrent jurisdictions and that the prosecutor’s discretion is limited to discussions involving jurisdiction, not sentencing.
 

 [1]
 

 Formerly, such matters were heard in the probate court, but in 1996, the Legislature created the family division of the circuit court to hear all family-related matters, including juvenile delinquency proceedings. See 1996 PA 409, Senate Fiscal Agency Bill Analysis, SB 1036 et al., November 1, 1996.