# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARLTON DOUGLAS YEAGER,

        Defendant-Appellant.

UNPUBLISHED
September 25, 2018

No. 337787
Macomb Circuit Court
LC No. 2016-002243-FC

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of armed robbery, MCL 750.529, and two counts of resisting or obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 300 to 400 months' imprisonment for the armed robbery conviction and 12 to 24 months' imprisonment for each count of resisting or obstructing a police officer. We affirm.

This case arises from an incident that occurred at FA Beauty Supply and Hair Braiding in Mount Clemens on May 29, 2016. The prosecution presented evidence that while Shalanda Lucas was having her hair braided by Fatoumata Kone, defendant entered the store armed with a BB gun and demanded that Lucas give him her belongings. The store's surveillance video showed a masked individual enter and leave the store. Lucas testified that the person, whom she identified as defendant, threatened her with a gun and demanded her property. Defendant's GPS tracking device placed him near the store at the time of the robbery. Police testimony established that defendant was arrested shortly after the incident based on a description provided by Lucas. Defendant was carrying a backpack containing clothing items similar to those worn by the robber. A BB gun was found under bushes at a nearby business and forensic testing revealed "very strong support" that defendant was a contributor to DNA found on the gun. After being arrested and placed in a police vehicle, defendant attempted to flee and assaulted two officers. Defendant did not present any evidence at trial. A jury convicted defendant of armed robbery and two counts of resisting or obstructing a police officer.

## I. HABITUAL OFFENDER NOTICE

Defendant first contends that he was denied due process because he was not adequately notified of the prosecution's intent to have him sentenced pursuant to MCL 769.12(1)(a), which prescribes a mandatory 25-year minimum sentence for a fourth-offense habitual offender who is

-1-

convicted of a serious crime and one or more of the offender's prior convictions is for a listed felony offense. We disagree.

Defendant did not argue below that the prosecution failed to provide adequate notice of its intent to have him sentenced pursuant to MCL 769.12(1)(a). Therefore, this issue is unpreserved. *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016). Generally, whether notice was properly provided under MCL 769.13 is reviewed de novo. *People v Hornsby*, 251 Mich App 462, 469; 650 NW2d 700 (2002). But because this issue is unpreserved, our review is limited to whether plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

On November 10, 2016, the prosecution filed a notice that was titled: "Habitual Offender – Fourth Notice – Mandatory 25 Year Sentence." The notice indicated that defendant was previously convicted of three or more felonies or attempted felonies, at least one was a prior listed felony as defined in MCL 769.12(6)(a), and, therefore, defendant was subject to the penalties provided by MCL 769.12(1)(a), i.e., "to imprisonment for not less than 25 years." At the November 14, 2016 arraignment on the amended felony information, defendant's trial counsel acknowledged receipt of the notice, and the prosecutor informed the trial court that defendant was subject to a mandatory 25-year sentence.

Defendant argues that adequate notice was not provided and that the 25-year minimum sentence was not mentioned until sentencing; defendant refers to statements made at earlier arraignments held on June 27, 2016, and July 18, 2018. He also attaches to his brief on appeal an habitual offender notice dated June 16, 2016, which only referred to MCL 769.12 generally. The prosecution, however, filed a new notice on November 10, 2016, the same day that it filed the amended felony information with the trial court. As discussed, the November 10, 2016 notice clearly provided that defendant was subject to the penalties under MCL 769.12(1)(a), expressly referred to the mandatory 25-year sentence, and was received by trial counsel on November 14, 2016. Accordingly, defendant received adequate notice that he was subject to sentencing under MCL 769.12(1)(a), including a 25-year minimum sentence, the trial court did not err by sentencing him under that provision, and defendant's due-process argument fails.

## II. SUFFICIENCY OF THE EVIDENCE

Next, defendant contends that there was insufficient evidence to support his conviction of armed robbery. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). This Court must view the trial evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found all of the elements of the offense were proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), mod 441 Mich 1201 (1992). Circumstantial evidence and reasonable inferences therefrom may be sufficient for rational trier of fact to find all of the elements of an offense beyond a reasonable doubt. *Carines*, 460 Mich at 757. Under this deferential standard, the prosecutor need not negate every theory consistent with innocence; the prosecutor is only obligated to prove the elements of the crime beyond a

reasonable doubt in the face of any contradictory evidence the defendant may present. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

> Defendant was convicted of armed robbery, the elements of which are:
>
> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

MCL 750.530(2) defines "in the course of committing a larceny" as including "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." This definition was added by the Legislature in 2004. It "considerably broadened the scope of the robbery statute, MCL 750.530, to encompass a 'course of conduct' theory of robbery, which specifically includes 'an attempt to commit the larceny[,]' " so that "a completed larceny is no longer necessary to sustain a conviction for the crime of robbery or armed robbery." *People v Williams*, 491 Mich 164, 184; 814 NW2d 270 (2012). "[T]he specific intent necessary to commit larceny is the intent to steal another person's property." *People v Cain*, 238 Mich App 95, 120; 605 NW2d 28 (1999). "Because intent may be difficult to prove, only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent." *Harverson*, 291 Mich App at 178.

Defendant only challenges that there was no evidence that he intended to steal anything. But Lucas testified that while defendant put a gun to her face, he told her to "get the f--k off your phone and give me your s--t." Defendant's demand of Lucas's property was sufficient to demonstrate his intent to steal her property. That defendant intended to commit a larceny is further supported by the evidence that he entered the store with his face covered; he had a BB gun that looked like a real weapon; he pointed the gun at Lucas; he fled after the incident, and he attempted to flee from the police after he was arrested. See *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001) ("A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense.").

Contrary to defendant's assertion, Lucas's testimony regarding defendant's statement was not impeached by the surveillance video or the GPS tracking information. Lucas admitted that the surveillance video did not show defendant pointing the gun at her face. Our review of the surveillance video confirms that it does not show defendant pausing and pointing a gun at Lucas's face. Lucas, however, testified that the video did not show the area where defendant paused. The video shows a large empty area in front of Lucas. If defendant paused and pointed the gun at Lucas outside the view of the camera, it would appear that he was more than several feet away from her when he did so. Lucas testified that defendant was not inches from her face, but it felt like it was in her face. Although defendant may not have paused within inches, or even feet, of Lucas's face, the video does not refute that he pointed a gun at her and told her to give

him her belongings. Moreover, although the GPS tracking information established that defendant was only in the store for less than a minute, this does not refute that he attempted to commit a larceny of Lucas's property during that period of time.

Defendant points to several other pieces of evidence that he claims demonstrate that he was merely cutting through the store, including (1) he was aware that he was wearing a GPS tracking device; (2) he was due to be released from parole and the tether in 35 days; (3) he went past the cash register; (4) he did not pick up Lucas's phone or purse; (5) Lucas's written statement did not include that defendant said anything to her, and (6) Kone did not hear defendant say anything. These matters, however, affect only the weight of the evidence and the credibility of the witnesses. "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Viewed in a light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction of armed robbery and, in particular, to show that he intended to steal Lucas's property. *Wolfe*, 440 Mich at 515.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next contends that he was denied the effective assistance of counsel by trial counsel's failure to request a jury instruction defining "attempt." We disagree.

Defendant failed to preserve his claim of ineffective assistance of counsel by moving for a new trial or an evidentiary hearing in the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Therefore, our review is limited to mistakes apparent from the record. *Id*. Generally, to establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms; and (2) that there is a reasonable probability that but for counsel's error the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012); Unger, 278 Mich App at 242.

During deliberations, the jury asked for clarification regarding the meaning of attempted larceny, stating: "Does the defendant failing to leave with nothing from anyone constitute an attempt at larceny? Is intent to commit larceny the same as attempt to commit a larceny?" Defense counsel suggested that the trial court reread the instruction as a whole but did not provide a specific answer to the question. The trial court reread the entire armed robbery instruction and also instructed the jury that "[t]he actual taking of something is not necessarily an element of the offense." Defense counsel stated his belief that the trial court's statements were "correct." Defendant now argues that his attorney should have requested M Crim JI 18.7, concerning the elements of an attempt to commit a crime.

Defense counsel's decision to merely request that the armed robbery instruction be read again is presumed to be reasonable trial strategy. See *Heft*, 299 Mich App at 83. Even if counsel's failure to request M Crim JI 18.7 were objectively unreasonable, it did not prejudice defendant. Defendant argues that M Crim JI 18.7 would have allowed the jury to focus on whether defendant intended to commit a larceny in this instance "because it made no sense." The instructions provided to the jury, however, stated that the prosecution was required to prove

that defendant "was in the course of committing a larceny," and that "[a] larceny is the taking and movement of someone else's property or money with intent to take it away from that person permanently." The instruction further explained that "in the course of committing a larceny included acts that occur in an attempt to commit the larceny." Although M Crim JI 18.7 would have made clear to the jury that an attempted larceny required the intent to commit a larceny, the instructions as a whole adequately informed the jury that intent was an element of the offense. Moreover, for the reasons discussed above, there was sufficient evidence for a rational factfinder to conclude that defendant intended to commit a larceny. Accordingly, there is no reasonable probability that the failure to provide M Crim JI 18.7 affected the outcome of the trial.

## IV. CONSTITUTIONALITY OF MCL 769.12

Finally, defendant contends that MCL 769.12(1)(a) violates the Eighth Amendment's prohibition against cruel and unusual punishment and the doctrine of separation of powers. We disagree.

Defendant did not present these arguments in the trial court. Therefore, this issue is unpreserved. See *Solloway*, 316 Mich App at 197. This Court reviews unpreserved issues for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

With regard to whether MCL 769.12(1)(a) violates the separation of powers doctrine, we note that statutes are presumed to be constitutional, and we must so construe them unless their unconstitutionality is readily apparent. *People v Russell*, 266 Mich App 307, 310; 703 NW2d 107 (2005). Const 1963, art 3, § 2 provides:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

The separation of powers doctrine does not require that the three branches of government be kept totally apart without any overlap of functions or powers. "Rather, the evil to be avoided is the accumulation in one branch of the powers belonging to another." *People v Conat*, 238 Mich App 134, 146; 605 NW2d 49 (1999). The Michigan Constitution further provides: "The legislature may provide for indeterminate sentences as punishment for crime and for the detention and release of persons imprisoned or detained under such sentences." Const 1963, art 4, § 45. Thus, "the ultimate authority to provide for penalties for criminal offenses is constitutionally vested in the Legislature." *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001). Although the judiciary has the power to exercise discretion in imposing sentences, the Legislature may limit this judicial discretion. *Id*. at 440; *Conat*, 238 Mich App at 147. Indeed, the Legislature may establish offenses that leave the judiciary no sentencing discretion, or that sharply limit judicial sentencing discretion. *People v Garza*, 469 Mich 431, 434; 670 NW2d 662 (2003).

The mandatory minimum penalty of MCL 769.12(1)(a) does not violate the separation of powers doctrine by invading the discretion of trial courts in sentencing. Through the enactment of MCL 769.12(1)(a), the Legislature decided to limit the discretion available to sentencing courts. See *Garza*, 469 Mich at 434. The mandatory minimum penalty prescribed in MCL

769.12(1)(a) does not violate the separation of powers doctrine because the Legislature clearly has authority to limit a trial court's sentencing discretion with regard to habitual offenders.

With regard to defendant's claim that the mandatory 25-year minimum sentence under MCL 769.12(1)(a) constitutes cruel and unusual punishment, this Court explained in *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011):

> The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const Am VIII. If a punishment "passes muster under the state constitution, then it necessarily passes muster under the federal constitution." [Citation omitted.]

Whether a punishment is cruel or unusual depends on "the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *People v Bowling*, 299 Mich App 552, 557-558; 830 N2d 800 (2013) (citation and quotation marks omitted).

Defendant's 25-year minimum sentence was within his minimum sentence guidelines range of 171 to 570 months. Thus, his sentence is presumed to be proportionate. "A sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *Id*. at 558. Defendant merely points to the trial court's statement that it would have sentenced him to less than 25 years if it were permitted to do so, but he fails to overcome the presumption of proportionality. Defendant also fails to compare his sentence to the penalty imposed for other crimes in this state. Finally, defendant discusses "three strikes" laws and their effectiveness, but, again, he fails to compare the penalty imposed for the same crime in other states. Accordingly, defendant fails to establish that his mandatory 25-year minimum sentence under MCL 769.12(1)(a) constitutes cruel or unusual punishment.

We affirm.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood