# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRIAN DAVID KANE,

Defendant-Appellant.

UNPUBLISHED
April 7, 2015

No. 318237
Jackson Circuit Court
LC No. 11-004710-FH

Before: JANSEN, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of possession of at least 450 grams but less than 1,000 grams of oxycodone, MCL 333.7401(2)(a)(*ii*); possession of at least 50 but less than 450 grams of morphine, MCL 333.7401(2)(a)(*iii*); possession of at least 50 but less than 450 grams of methadone, MCL 333.7401(2)(a)(*iii*); possession of less than 50 grams of hydromorphone, MCL 333.7401(2)(a)(*iv*); and breaking and entering a store with intent to commit a larceny, MCL 750.110(1). The trial court imposed concurrent sentences of imprisonment of 40 to 60 years for the oxycodone conviction, 20 to 40 years each for the morphine and methadone convictions, 5 to 8 years for the hydromorphone conviction, and 6 to 18 years for the breaking-and-entering conviction. The court sentenced defendant for the drug offenses as a second or subsequent offender, MCL 333.7413(2), and for the breaking-and-entering offense as an habitual offender fourth, MCL 769.12. Defendant appeal as of right. We affirm.

This case arose when a pharmacy was broken into after business hours in September 2010. The prosecuting attorney's theory of the case was that defendant unsuccessfully tried to pry the door open, then broke a window to gain entry, pried open the cabinet that housed the narcotics, and took many bottles of pills from it. Defense counsel conceded that defendant broke into the pharmacy intending to commit a larceny, but suggested that the prosecution would not be able to prove that defendant knowingly took pills of the kinds, or in the quantities, charged. The subject pharmacy's supervisor of operations testified that the kind and quantities of drugs missing after the break-in were determined by comparing what was left in the narcotics cabinet after the break-in with inventory records indicating what was there before it.

-1-

# I. EXTRANEOUS INFLUENCES

At the start of jury selection, the trial court asked the prospective jurors about exposure to media accounts of the events underlying this trial, and apparently none disclosed any such exposure. After 13 jurors were seated and sworn, trial proceeded through opening statements and two witnesses before proceedings were adjourned that day. On the second day of trial, after two more witnesses testified, the court announced a lunch recess, then admonished the jurors to avoid any media coverage concerning the trial, explaining, in part, that improper exposure to media influences could cause a mistrial.

Then, before trial resumed, a court officer informed the court that one of the jurors had admitted reading a media account of the subject of the trial the prior night. After eliciting from the juror in question that she had indeed read of the case on the Internet, but also that she did not say anything about it to the other jurors, the court thanked the juror for her candor and excused her. Following defense counsel's request that the court "make the same inquiry of all of the others. . . . [J]ust to ask them if they've read anything," the court had the jury brought in and stated:

> Ladies and gentlemen, we . . . are missing one juror because one juror did exactly what I [told] 'em not to do—not to read the newspaper—or about two different times for you. And if somebody else does it, we're going to cause a mistrial and this case is going to be very expensive for the State and court to have to do again. So I'm going to ask you to do a couple of things between . . . now and when the rest of the case concludes. Number one, don't get on the computer, don't get on M-Live, don't look at the [local newspaper].
>
> * * *
>
> Does anybody have . . . any questions about that at all? Did any of the other rest of you read the article? All right. And I'm not seeing any affirmative indication from the jury.

At issue is whether the court erred in asking the remaining jurors collectively about exposure to the article in question, as opposed to asking them individually about whether they had "read anything" as defense counsel requested. A trial court's general conduct of trial is reviewed for an abuse of discretion. See *People v Ramano*, 181 Mich App 204, 220; 448 NW2d 795 (1989). This includes the court's decisions relating to jury selection. See, generally, *People v Tyburski*, 445 Mich 606; 518 NW2d 441 (1994).

Appellate counsel argues that the trial court effectively "foreclosed any real probability of obtaining a true response from the jurors" for having emphasized that any such irregularity would result in a mistrial at great expense to the state. We decline to share in counsel's speculation that the jurors treated the court's concerns over the costs of a mistrial as overriding

their duty to respond honestly to the court's inquiry.[1] Nor do we have any basis upon which to presume that any of the remaining jurors had any experience of reading about the case to hide in the first instance. Nor will we presume that if a juror did improperly read of the case in the media and failed to come forward when admonished to do so, the juror then went on to disregard the court's instructions at the close of proofs to "return a true a[nd] just verdict based only on the evidence and my instruction on the law," to "only consider the evidence that has been properly admitted in this case," and to "not use any personal knowledge you may have about a place, person, or event."

"An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 259; 749 NW2d 272 (2008). In this case, the trial court's decision was well within the range of principled outcomes when the court promoted judicial economy by electing to ask the remaining jurors collectively, instead of individually, if any had run afoul of the court's instructions to refrain from reading anything about the case.

## II. INSTRUCTION ON AIDING AND ABETTING

In response to a request by the prosecuting attorney, the trial court provided the jury an instruction on aiding and abetting as an alternative basis for finding defendant guilty.[2] Appellate counsel argues that the trial court erred in this regard. For the reasons set forth below, we agree, but conclude that the error was harmless.

A criminal defendant has a right to have his or her case decided by a properly instructed jury. See *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000); MCL 768.29. An instruction should not be given if it is without evidentiary support. *People v Johnson*, 171 Mich App 801, 804; 430 NW2d 828 (1988). Jury instructions that involve questions of law are reviewed de novo, but a trial court's determination whether an instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

In this case, there was no evidence that a second person was involved in the incident in question, and no such theory was even mentioned until the prosecuting attorney introduced it in closing argument. In light of the complete lack of evidentiary support for any such theory, the

---

[1] Counsel did not ask the court to say something to mitigate any inhibitions that may have resulted from the court's comments about the expense of a mistrial.

[2] Appellate counsel argues that defense counsel was ineffective for failing to object to the instruction. However, our review of the record brought to light that counsel objected to the prosecuting attorney's closing argument introducing the theory that someone other than defendant may have been involved in the criminal conduct at issue, then reiterated that objection when invited to put objections on the record after the jury received its final instructions. Because defense counsel adequately preserved this issue by objection on the record, appellate counsel's argument that counsel was ineffective for failure to do so is inapt and merits no consideration.

instruction on aiding and abetting was erroneous. The prosecution on appeal eschews any attempt to rehabilitate the trial court's decision to provide that instruction, thus effectively confessing error, but instead argues only that the error was harmless. "[A] preserved, nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), quoting MCL 769.26. The defendant bears the burden of showing that such a miscarriage of justice took place. *Id*. at 493-494.

Defendant at trial conceded his responsibility for breaking into the pharmacy with the intent to commit a larceny. What was left at issue was whether the prosecution could produce sufficiently reliable documentation or other evidence to satisfy the jurors beyond a reasonable doubt that defendant in fact possessed the pharmaceuticals in the kinds and quantities charged. The jurors' task, then, was to assess the veracity of the witnesses who spoke to the kind and quantities of drugs stored in the subject cabinet at the time in question, along with the documentation the witnesses produced. Imagining that defendant helped another in possessing those substances would not have helped the jurors' assessment of that evidence. The gratuitous instruction on aiding and abetting was thus merely that; it neither helped the prosecution obtain a conviction, nor hurt defendant's attempt to defend the charges.

Because the error that appellate counsel exposes with this issue was not outcome-determinative, reversal is not warranted.

## III. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Appellate counsel argues that the prosecution failed to present sufficient evidence to support the drug-possession convictions and alternatively argues that the verdict in those regards was contrary to the great weight of the evidence. Whether the prosecution presented sufficient evidence to support a verdict of guilty is a question of law, calling for review de novo. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001). A trial court's decision on a motion calling for a new trial on the ground that the verdict was against the great weight of the evidence is reviewed for an abuse of discretion. See *People v Lemmon*, 456 Mich 625, 648 n 27; 576 NW2d 129 (1998). However, because defendant's great-weight argument is unpreserved, review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## A. SUFFICIENCY

Appellate counsel argues that the evidence was insufficient to show that defendant possessed the drugs in question, or, alternatively, that he knew what drugs he possessed, or in what quantities. When reviewing the sufficiency of evidence in a criminal case, a reviewing court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that each element of the crime was proved beyond a reasonable doubt. *Herndon*, 246 Mich App at 415.

## 1.  POSSESSION

Not in dispute is that none of the medications deemed to have gone missing as a consequence of the break-in was ever recovered—on defendant's person or otherwise.  However, also not in dispute is that defendant committed the breaking and entering.  Further, defendant's position on appeal that the evidence did not support an instruction on aiding and abetting, which we addressed in Part II, *supra*, necessarily constitutes a concession that no other person was involved in the after-hours break-in of the pharmacy.

"Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime."  *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).  In this case, the evidence that the narcotics cabinet had been broken into, and that the pharmacy's inventory of pills containing the controlled substances at issue was substantially reduced, constituted good circumstantial evidence that defendant took possession of those substances.

## 2.  KNOWLEDGE OF KIND

"[B]ecause of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient."  *People v Fetterley*, 229 Mich App 511, 518; 583 NW2d 199 (1998).  Appellate counsel argues that the evidence that defendant spent perhaps no more than two minutes inside the pharmacy militated against the conclusion that the perpetrator had knowledge of what was being possessed.

The evidence that defendant broke into the pharmacy, then also, by inference, its narcotics cabinet in short order, militated against concluding that upon prying that cabinet open defendant became indifferent to what was inside, or exercised no selectivity about what to take from it.  According to the testimony, the medications were plainly labeled for identification.  The requisite knowledge was adequately established.

## 3.  QUANTITIES

Appellate counsel emphasizes that the pharmacy's documentation included differing figures for a certain drug on a certain date and asserts that the pharmacy's supervisor of operations "preferred the explanation that [his pharmacy] made false reports to the DEA, as opposed to the possibility that his 'exhibit' providing the weights of the missing drugs could be in error."  However, review of the transcripts shows that the supervisor acknowledged only an inconsistency, which he attributed to error in the amount reported to the DEA; he did not attribute it to any deliberately false reporting.  Further, that and other minor inconsistencies in the pharmacy's recordkeeping were not so severe as to strip the supervisor's calculations of evidentiary value.

Appellate counsel points out that the testimony indicated that some pill bottles were found on the floor and that the record includes no indication whether they were included with the numbers calculated to have remained on the shelf or with the numbers attributed to defendant's possession.  However, the lack of further evidentiary development of this particular point at trial

did not invalidate the testimony and documentation concerning the extent to which inventories of the medications in question were reduced as the result of the break-in.

Appellate counsel further points out that the testimony indicated that the scale the pharmacy's supervisor of operations used to calculate the weights of the pills in question was accurate to only within plus or minus 10 percent. However, if one were to adjust all of the expert's calculations downward by 10 percent, this would nonetheless leave quantities of each of the four kinds of drugs at issue within the range set forth by the statutes under which defendant was convicted.[3]

## B.  GREAT WEIGHT OF THE EVIDENCE

"[T]he hurdle a judge must clear to overrule a jury is unquestionably among the highest in our law.  It is to be approached by the court with great trepidation and reserve, with all presumptions running against invocation." *Lemmon*, 456 Mich at 639 (quotation marks and citation omitted).  "A trial judge does not sit as the thirteenth juror in ruling on motions for a new trial and may grant a new trial only if the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *Id*. at 627.  A trial court might disturb a jury verdict where testimony upon which the jury depended was "patently incredible or defies physical realities," or where "the witness' testimony has been seriously impeached and the case marked by uncertainties and discrepancies." *Id*. at 643-644 (quotation marks and citations omitted).

In arguing "great weight" as an alternative to sufficiency, appellate counsel merely incorporates or reiterates the sufficiency arguments.  The suggestion, then, is that if the documentary and other evidence, viewed in the light most favorable to the prosecution, was sufficient to prove that defendant knowingly possessed the kinds and quantities of drugs for which he was charged and convicted, some of the evidence upon which the jury thus had to rely was nonetheless "patently incredible," "defie[d] physical realities," or had been "seriously impeached and the case marked by uncertainties and discrepancies." *Id*. (quotation marks and citations omitted).  Because appellate counsel has not exposed any such extreme problems, this alternative argument must fail.

## IV.  DOUBLE JEOPARDY

The Double Jeopardy Clauses of the federal and state constitutions prohibit a criminal defendant from being placed twice in jeopardy for a single offense.  US Const, Ams V & XIV;

---

[3] To the extent that appellate counsel suggests that defendant's hurried course of contact left him without knowledge of the quantities of the various drugs he ended up possessing, such argument in inapt, because "a defendant need not know the quantity of narcotics to be found guilty of possession of a controlled substance under MCL 333.7401. . . ." *People v Quinn*, 440 Mich 178, 189; 487 NW2d 194 (1992), quoted with approval in *People v Mass*, 464 Mich 615, 626; 628 NW2d 540 (2001).

Const 1963, art 1, § 15. Appellate counsel argues that the decision to charge defendant separately for possession of each of the four drugs at issue, instead of just once for an aggregated quantity of such contraband, violated his right against double jeopardy. This Court has reached this issue, and decided it squarely in accord with how defendant was prosecuted in this case. *People v Green*, 196 Mich App 593, 595; 493 NW2d 478 (1992). In *Green*, this Court concluded that the pertinent statutory language indicated a legislative determination that criminal liability for drug possession should "turn on the consideration of two separate factors," the amount and the kind of controlled substance possessed. *Id*. at 595-596. No error has been shown.

## V. SENTENCING

Appellate counsel argues that defendant's sentence for his most serious conviction, 40 to 60 years' imprisonment for the violation of MCL 333.7401(2)(a)(*ii*), violates our state constitution's ban on "cruel or unusual punishment." See Const 1963, art 1, § 16. Constitutional issues present questions of law, calling for review de novo. *People v Conat*, 238 Mich App 134, 144; 605 NW2d 49 (1999).

The ordinary penalty for a violation of MCL 333.7401(2)(a)(*ii*) is "imprisonment for not more than 30 years or a fine of not more than $500,000.00, or both," but repeat offenders are subject to the doubling of either facet under MCL 333.7413(2). Defendant's 60-year maximum sentence thus reflects those statutes.

Appellate counsel protests that, given that defendant was 46 years old at the time of sentencing, his 40-year minimum sentence effectively constitutes a non-parolable life sentence. However, defendant's minimum sentence fell within the recommended range under the sentencing guidelines and is actually near the low end of that range. "[A] sentence within the guidelines range is presumptively proportionate, and a sentence that is proportionate is not cruel or unusual punishment." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) (citation omitted). This Court has held that "this Court may not consider challenges to a sentence based exclusively on proportionality, if the sentence falls within the guidelines." *People v Pratt*, 254 Mich App 425, 429-430; 656 NW2d 866 (2002). Further, an otherwise valid prison sentence is not rendered invalid if the minimum term is so lengthy as effectively to preclude the possibility that the defendant will live to see parole eligibility. See, generally, *People v Merriweather*, 447 Mich 799, 808-809; 527 NW2d 460 (1994). For these reasons, appellate counsel fails to show that defendant's sentence runs afoul of our state's constitutional prohibition against cruel or unusual punishment.

Appellate counsel also objects to the assessment of $750 in court costs. The original judgment of sentence, dated September 9, 2013, set forth such an assessment. However, eleven months after issuing the original judgment of sentence, the court issued a new one in which the $750 indicated for court costs was omitted. Because the costs at issue have been deleted from defendant's sentence, we need not reach appellate counsel's attendant objections. See *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994).

## VI. DISCOVERY

Appellate counsel, and also defendant in his Standard 4 brief, argue that the prosecution denied defendant a fair trial by failures to cooperate with discovery requests. Appellate counsel and defendant identify no specific decision of the trial court concerning discovery to take issue with, but instead assert generally that the prosecution was less than cooperative. At issue are certain pharmacy records, which defense counsel received only after trial was in progress. Defense counsel requested a continuance so that he could review the documentation, which the trial court denied.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To prove a *Brady* violation occurred, a defendant must show that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014).

The documentation at issue was pharmacy records, no less accessible to the defense than to the prosecution.[4] The inconsistencies in the documentation produced during trial, or other indications of a lack of diligence in recordkeeping, that the defense brought to light were not so severe as to throw seriously into doubt all the pharmacy records; thus, the evidence cannot reasonably be characterized as more favorable to the defense than to the prosecution. Whether other documents further down the line of the pharmacy's recordkeeping (e.g., the individual prescriptions and invoices of which defendant makes issue in his Standard 4 brief) would have shown similar irregularities, or otherwise provided more or better impeachment opportunities, is speculative. Defense counsel did effectively cross-examine the pertinent prosecution witness over irregularities that the late-disclosed documentation revealed. Neither appellate counsel nor defendant offer concrete theories on how earlier discovery, or a continuance when requested, would have improved the defense's opportunities to make use of the materials involved.

Further, when, at a pretrial hearing, defense counsel complained of still needing the documentation purporting to list what was taken as the result of the break-in, the prosecuting attorney protested that such documents had been provided to defense counsel's predecessors and offered to make his entire file available for copying if defense counsel so desired. No due process violation has been shown.

---

[4] What became the prosecution's Exhibit 37, a listing of the amounts of oxycodone, morphine, methadone, and hydromorphone allegedly missing from the pharmacy after the subject break-in, may seem an exception, because it was prepared at the request of the prosecution. However, the record does not reveal any willful withholding of such documentation, and there was nothing to stop the defense from asking the pharmacy for identical or similar documentation.

## VII.  ASSISTANCE OF COUNSEL

Appellate counsel, and also defendant in his Standard 4 brief, argue that defendant was convicted and sentenced without the benefit of effective assistance of counsel. "In reviewing a defendant's claim of ineffective assistance of counsel, the reviewing court is to determine (1) whether counsel's performance was objectively unreasonable and (2) whether the defendant was prejudiced by counsel's defective performance." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).  Regarding the latter, the defendant must show that the result of the proceeding was fundamentally unfair or unreliable and that but for counsel's poor performance the result likely would have been different. *People v Messenger*, 221 Mich App 171, 181; 561 NW2d 463 (1997).

### A.  PREDECESSOR COUNSEL

At a pretrial motion hearing, defendant's third of four trial attorneys reported that defendant had discharged him that morning, and defendant stated that he would thereafter "represent myself or do whatever."  Defendant went on to request an evidentiary hearing to develop his assertion that his second defense attorney had persuaded him to waive his preliminary examination in connection with the drug possession charges in anticipation of a plea agreement that in fact never came through.  The court expressed its confidence that the district court followed the procedures for putting the waiver of the preliminary examination on the record, with defendant's participation, and opined that waiver of the preliminary examination had little bearing on the trial.

Appellate counsel argues that the lack of a preliminary examination on the possession charges deprived defendant of the "ability to explore the charges brought, and the evidence in support of them," and that understanding plaintiff's "theory of the case would have aided the parties and the Court in resolving discovery issues prior to trial."  Beyond these generalities, however, appellate counsel does not suggest how the defense would have been strengthened had the preliminary examination taken place.  In supplementing appellate counsel regarding this issue in his Standard 4 brief, defendant adds nothing relating to predecessor counsel or the waived preliminary examination.  Because neither advocate shows that the lack of a preliminary examination on the drug possession charges rendered the trial fundamentally unfair or unreliable, or that, had defendant had the benefit of the waived preliminary examination, the result of trial would have been different, the claim of ineffective assistance of counsel is without merit.  See *id*.

### B.  TRIAL COUNSEL

Appellate counsel argues that, if this Court does not accept the argument that the defense was denied discovery to which it was entitled, this Court should deem defendant's trial attorney ineffective for having failed to timely subpoena the documents the defense needed.  Because we did indeed reject appellate counsel's issues concerning discovery, in Part VI, *supra*, we conclude here that, to the extent that the defense was inconvenienced for not having received certain documents until trial was underway, the inconvenience resulted from defense counsel's own failure to exercise due diligence.  However, just as we concluded in Part VI that appellate counsel and defendant failed to show that there was a reasonable probability that earlier or more

detailed discovery, or more time to review documents obtained after trial began, would have resulted in a different outcome, we conclude here that any such deficiency in trial counsel's performance did not affect the outcome of trial or render the proceedings unfair or unreliable.

Appellate counsel also points out that trial counsel and the trial court were frequently in conflict. Appellate counsel asserts that quarreling with the court cannot be considered proper functioning as an attorney, but also acknowledges that the trial court stated at sentencing that its conflicts with defense counsel did not influence its sentencing decisions. Appellate counsel does, however, express concern that "there is no way of knowing the effect this had on the jury." This assertion is, in effect, an acknowledgement that it is mere speculation to presume that the jury found defendant guilty not because of the evidence, but as a reaction to his attorney's conduct.

Appellate counsel also points out that trial counsel conceded defendant's guilt in connection with the breaking-and-entering charge and asserts that trial counsel did so without defendant's agreement. Counsel cites authority for the proposition that a "complete" concession of guilt without the defendant's consent constitutes ineffective assistance of counsel, apparently failing to appreciate that the breaking-and-entering charge was the least grave of the five charges for which defendant was prosecuted, and so the concession of guilt was hardly a "complete" one. "Where defense counsel in opening statement recognizes and candidly asserts the inevitable, he is often serving his client's interest best by bringing out the damaging information and thus lessening the impact." *People v Wise*, 134 Mich App 82, 98; 351 NW2d 255 (1984). "[A]rguing that the defendant is merely guilty of the lesser offense is not ineffective assistance of counsel." *Id*. Because the evidence in this case tied defendant to the scene of the crime by matching blood recovered from that location to defendant's DNA, it is apparent that defense counsel sought to gain credibility with the jury by conceding defendant's responsibility for breaking into the pharmacy.

Appellate counsel asserts that defense counsel admitted at sentencing that he was not prepared to deal with defendant's susceptibility to enhanced sentencing on each of his convictions as the result of his being a repeat offender. However, what defense counsel actually said was, "I am not in any way prepared for anything other than what was reflected in the presentence report and the scoring. If the Court is going to consider anything other than that, then I'm not prepared to defend my client at this time." The trial court then reminded counsel that he was a defense attorney whose experience left him familiar with enhanced penalties that repeat offenders such as defendant faced, and went on to impose sentences consistent with the applicable statutes and the sentencing guidelines. No deficiency in trial counsel's advocacy is apparent from reading the sentencing transcript, and appellate counsel does not suggest how counsel might have performed better.

Defendant, in his Standard 4 brief, argues that defense counsel should have demanded a bill of particulars, see MCR 6.201(A)(3), in order to anticipate how the prosecution intended to prove its case, or otherwise should have more forcibly demanded disclosure of the information culminating in the prosecution's exhibit particularizing the oxycodone, morphine, methadone, and hydromorphone allegedly missing from the pharmacy after the subject break-in. However, at a hearing on pretrial motions that took place one month before trial began, the prosecuting attorney spelled out how he intended to prove his case. Further, in asserting that the defense

-10-

might have been stronger if a bill of particulars had been demanded, defendant suggests that it would have prompted defense counsel to move the trial court in limine to redact exhibit 37 where it showed quantities of pharmaceuticals allegedly stolen but with no weights assigned to them.[5] However, trial counsel may have reasoned that the inclusion in that exhibit of drugs with no weights assigned underscored counsel's argument that the prosecution could not reliably prove the missing quantities. Further, had the defense asked to redact those items, the prosecuting attorney in response might have endeavored to increase their relevance by eliciting testimony, or bringing documentary evidence, that provided at least conservative estimates of the attendant weights, thus adding to the quantum of evidence against defendant. Defense counsel's disinclination to seek redaction of that exhibit may be deemed sound strategy. See *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999).

Defendant in his Standard 4 brief also asserts that defense counsel should have demanded that the prosecution "pin the charges down to an exact weight as to the substances," but cites no authority for the proposition that where a statute criminalizes possession of a substance within a range of weights the prosecution must prove the amount possessed with any greater precision than is necessary to establish that it was within that range.

Defendant further argues that defense counsel's performance was deficient for his not having made issue of the prosecution's failure to establish the chemical origins of the substances in question. However, the identity of the substances taken was well established by pharmacy records and not seriously in doubt.

Defendant asserts that defense counsel was not prepared to cross-examine the pharmacy's supervisor of operations. However, the record shows that counsel did adequately cross-examine that witness, eliciting from him that the amount of morphine on hand at a given time was reported in one quantity for purposes of the pharmacy's inventory and a different amount for the the DEA, causing the witness to opine that the pharmacy thus misreported that particular drug to the DEA. Further, because that witness's strong pharmaceutical credentials were in evidence, counsel acted reasonably in declining to challenge that witness's expertise. Moreover, because the amount of each drug reported missing was above the minimum in connection with the statutory requirements underlying the attendant convictions, arguing over minor variations in the weight of the various pills would not have strengthened the defense.

For these reasons, appellate counsel and defendant have failed to show that defendant was convicted or sentenced without the benefit of effective assistance of counsel.

---

[5] The pharmacy's supervisor of operations explained that his calculations of missing oxycodone did not take into account several forms of that drug that went missing after the break-in but that had been discontinued by their manufacturers, and of which he had no specimens at hand, because he thus lacked a convenient means of determining their weights.

## VIII.  THE PROSECUTION'S EXHIBIT 37

Defendant, in his Standard 4 brief, argues that the trial court erred when it admitted, over a hearsay objection, the prosecution's Exhibit 37, which was a list, prepared by the pharmacy's supervisor of operations, of the kinds and quantities of oxycodone, morphine, methadone, and hydromorphone allegedly missing from the pharmacy after the subject break-in.

Hearsay, meaning testimony regarding a person's unsworn, out-of-court assertions offered to prove the truth of the matters asserted, is generally inadmissible, subject to several exemptions and exceptions as provided by the rules of evidence.  MRE 801-805.  In this case, the trial court did not elaborate when overruling the hearsay objection, but defendant apparently presumes that the trial court deemed the exhibit admissible under the exception for business records, MRE 803(6).

Where all the information offered by a chart reflects testimony properly provided, or documents properly admitted into evidence, the chart is merely derivative of, or cumulative to, that other evidence, offering no information not placed in evidence by other means.  See *United States v King*, 616 F2d 1034, 1041 (CA 8, 1980) (opining that "[w]here charts which fairly summarize the evidence are used as an aid in understanding the testimony already introduced and the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary, the use of charts is proper").  The prosecution's Exhibit 36, the admission of which is not at issue on appeal, was a listing of medications taken in the break-in, compiled by comparing quantities remaining in the narcotics cabinet after the break-in with quantities other, routine, business records indicated were on hand at the close of business that day.  Exhibit 37 in turn was a selective subset of Exhibit 36, listing only the controlled substances at issue in this case.  Thus, Exhibit 37 added nothing to the body of evidence introduced in other forms, and served no function other than to facilitate convenient retrieval of some of the information included within that evidence.  Further, the preparer of the exhibit was subject to cross-examination with documents used to prepare the summary.  Admission of the exhibit over a hearsay objection was not erroneous.

## IX.  DUE PROCESS AND EQUAL PROTECTION

Defendant, in his Standard 4 brief, argues that the prosecution's decision to charge him initially with breaking and entering with intent to commit larceny, then months later to add the four possession charges, violated his constitutional rights to due process and equal protection. Both of those constitutional guarantees protect against irrational or arbitrary governmental action.  See *Bevan v Brandon Twp*, 438 Mich 385, 391; 475 NW2d 37 (1991) (due process); *People v Pitts*, 222 Mich App 260, 273; 564 NW2d 93 (1997) (equal protection).  Defendant

argues that the prosecution violated his constitutional rights by having acted on the basis of improper motivation.[6]

The prosecuting attorney made plain his motives in this regard:

Based on his record, I didn't feel that [breaking and entering] was sufficient to deal with the threat of Mr. Kane being the most prolific burglar that in my twenty-three year career I have ever seen. Yes, I used a novel approach by charging him with the main narcotic drugs that were stolen in the break-in. . . . I felt in the interest of justice and to protect the public, that we needed a more substantial sentencing scheme in which to insure that Mr. Kane was kept off the streets of our communities because now he has nineteen felony convictions, eight high severity felonies, six low severities, fourteen total breaking and entering or burglary convictions totaling nine separate counties, two separate states, he was on parole when he committed this offense, so being on parole where you're supposed to be on your best behavior, it doesn't deter him.

Defendant himself admitted at sentencing, "I'm a drug addict."

As defendant acknowledges in his Standard 4 brief, prosecutors have wide discretion in how they file charges. *People v Evans*, 94 Mich App 4, 6-7; 287 NW2d 608 (1979). Accordingly, judicial review of a prosecutor's exercise of charging discretion "is limited to whether an abuse of power occurred, i.e., whether the charging decision was made for reasons that are unconstitutional, illegal, or ultra vires." *Conat*, 238 Mich App at 149. This concerns not only the decision regarding what charges to bring, but when to bring them. See *People v Farmer*, 193 Mich App 400, 402; 484 NW2d 407 (1992).

For purposes of equal protection, improper selective enforcement arises from invidious discrimination taking the form of choosing persons to investigate or prosecute on the basis of such attributes themselves unrelated to criminal culpability such as "'race, sex, religion or the exercise of a fundamental right.'" *People v Maxson*, 181 Mich App 133, 135; 449 NW2d 422 (1989), quoting *People v Ford*, 417 Mich 66, 102; 331 NW2d 878 (1982).

Defendant characterizes the decision to charge him with possession of the drugs as an attempt to bypass the Legislature's provisions for punishment of break-ins or larcenies. However, prosecutors routinely and properly "choose among various applicable criminal statutes

---

[6] Defendant asserts that he waived his preliminary examination on the added charges in exchange for a plea agreement that would have limited his minimum sentence to six years' imprisonment, but that the prosecuting attorney refused to proceed accordingly. However, defendant does not assert, let alone offer record citations to prove, that any plea proceeding had progressed to where there was an agreement in place that the prosecuting attorney had some duty to respect. Further, a prosecutor generally is not bound by a plea agreement until it has come to fruition by way of formal approval of the court. *People v Heiler*, 79 Mich App 714, 721-722; 262 NW2d 890 (1977).

in deciding which charges to bring against a defendant." *Conat*, 238 Mich App at 149. "Indeed, the prosecutor is a constitutional officer entrusted with performing the executive function of bringing criminal charges against defendants." *Id*.

Further, prosecutors routinely prosecute a single course of criminal activity in connection with all applicable statutes. See *People v Goold*, 241 Mich App 333, 342-343; 615 NW2d 794 (2000). The breaking-and-entering statute under which defendant was charged, MCL 750.110(1), is part of the criminal code, and the drug possession statute under which he was charged, MCL 333.7401(2)(a), is part of the Public Health Code. Defendant cites no authority for the proposition that, where a course of criminal conduct violates both the criminal code and the Public Health Code, being charged under one of those statutory schemes immunizes the person charged from being charged under the other as well.

Defendant asserts that the prosecuting attorney added the drug-possession charges out of "pure vindictiveness." However, the prosecuting attorney's explanation of his charging decision at sentencing suggested not personal vindictiveness, but rather action in furtherance of the legitimate "state purpose" of "maintenance of law and order." *Maxson*, 181 Mich App at 135. Further, distinguishing between chronic recidivists and offenders with lesser criminal histories does not implicate suspect classifications identified as demanding strict judicial scrutiny such as race, sex, religion, or the exercise of a fundamental right. See *id*.

For these reasons, defendant has failed to show that what he characterizes as improper prosecutorial motivation or personal vindictiveness was anything other than the proper exercise of the prosecutor's wide discretion in deciding what charges to bring and when to bring them.

Affirmed.


/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Jane M. Beckering

-14-