*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 31, 2025
9:29 AM

Plaintiff-Appellee,

v

No. 366605
St. Clair Circuit Court
LC No. 23-000230-FC

ERIK HALIL NARDINI,

Defendant-Appellant.

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant, Erik Halil Nardini, appeals as of right his jury trial convictions of kidnapping, MCL 750.349, and absconding or forfeiting bond, MCL 750.199a. The trial court sentenced Nardini as a second-offense habitual offender, MCL 769.10, to concurrent terms of 20 to 60 years' imprisonment for kidnapping, and two to six years' imprisonment for absconding or forfeiting bond. On appeal, Nardini argues that (1) there was insufficient evidence supporting his convictions, (2) his convictions were against the great weight of the evidence, and (3) he is entitled to resentencing because of one improperly scored prior record variable (PRV) and multiple improperly scored offense variables (OVs). We affirm.

## I. BACKGROUND

This case started with Nardini kidnapping LN, his biological child, in early January 2023. Nardini and his estranged wife, Patricia Nardini (Patricia),[1] were LN's biological parents. Nardini and Patricia never divorced. But their marriage was moribund by the time of the events in this case. After a fraught and hostile relationship, Nardini took physical custody of LN. There was not a formal custody agreement or court order. Rather, after a period of shared custody, Patricia wrote Nardini a letter agreeing to give him sole custody. Nardini claimed that she wrote the letter voluntarily. Patricia claimed that she wrote or signed the letter under duress.

---

[1] Because Patricia shares Nardini's last name, we refer to her by her first name for clarity.

In March 2022, Patricia tried to contact Nardini to spend time with LN, but Nardini refused. She hired a private investigator to locate LN. She also tried to serve a personal protective order (PPO) and divorce summons on Nardini.

On Friday, January 6, 2023, St. Clair Shores Police arrested Nardini following a dispute and confrontation with Patricia over a recreational vehicle (RV) she was trying to sell. Patricia alleged that during the confrontation, Nardini tried to run her over with his vehicle and that he later stole the RV. Nardini was charged and jailed related to the RV incident.

While Nardini was incarcerated, Patricia unsuccessfully tried to retrieve LN. She contacted St. Clair Shores Police and requested that they conduct a wellness check. She also tried to retrieve LN from the house of Nardini's friend, Laurianne Hunsanger. Patricia told Hunsanger that she was present at her house to get LN because Nardini was not able to take care of her.

Meanwhile, Nardini called Hunsanger from jail and told her not to give LN to Patricia. And the Michigan State Police (MSP) contacted Hunsanger and informed her that she needed to return LN to Patricia.[2] When Hunsanger told Nardini about the police, Nardini told her not to return LN, to take her to another location, and to keep her hidden.

On Monday, January 9, 2023, Patricia acquired an ex parte order requiring that Nardini return LN to Patricia. The order was effective immediately. It stated, "Ex-parte Order for Minor Child to be Returned to the Plaintiff's Care Until Further Order of the Court." Nardini was still in police custody. A process server served the ex parte order, a PPO, and a divorce summons on Nardini at the jail.

That same day, Nardini was released from jail on bond with instructions to remain in the state. After his release, and with the help of Hunsanger, Nardini took LN and drove to Ohio. He took various steps to avoid detections or being seen with LN. For example, when Hunsanger drove with LN to the St. Clair County Jail parking lot to pick up Nardini following his release, she received a phone call from a different inmate instructing her to leave the St. Clair County Jail parking lot and go to a Walmart or to a McDonalds. Nardini later told Hunsanger to turn off her phone and suggested other ways to covertly communicate. They later met at a fast food restaurant, where Nardini took control of LN. At trial, when asked if LN was free to leave at that time, Nardini testified that "[s]he was buckled in her car seat." "Yeah. I'm sure she was buckled in."

Nardini left Michigan for Ohio. He arranged to stay with friends in Clyde, Ohio before driving farther south toward Dayton, Ohio. After leaving Clyde, friends that Nardini stayed with contacted him about an alert regarding LN that they saw on social media. One friend encouraged Nardini to turn LN in, but Nardini refused. He explained that he needed to shut off his phone to avoid being traced.

Ohio State Highway Patrol officers arrested Nardini in Auglaize County, Ohio on January 10, 2023. At the time of Nardini's arrest, LN was in the back seat of his car. Nardini told

---

[2] Hunsanger later testified that MSP did not order her, rather, they informed her that she "should" return LN.

the arresting officer that he did not intend to permanently leave Michigan. But he admitted to leaving the state despite receiving strict orders not to do so at his arraignment.

Nardini was charged with kidnapping and absconding or forfeiting bond. He was tried and convicted of those charges following a jury trial and an unsuccessful motion for a directed verdict.

At sentencing, Nardini challenged the sentencing guidelines score. He challenged PRV 5 on the basis that a 2018 disorderly person-jostling conviction (pleaded down from fourth-degree child abuse and domestic violence) was not an offense against a person because no one else was involved. The trial court disagreed, stating that "there is probably a legitimate basis for scoring it, especially when it is a lesser offense arising out of more serious physical interactions." Nardini also challenged OV 4, arguing that LN was emotionally distraught because she was in a new environment with her mother, not because of the kidnapping. The trial court disagreed, finding that LN had trauma directly related to the kidnapping episode. Next, Nardini challenged OV 10, arguing he did not engage in predatory conduct defined as "pre-offense conduct directed at a victim for the primary purpose of victimization." The trial court stated:

> Well sometimes pre-offense conduct for purposes of scoring of OV 10 at 15 points is difficult to see. But I think it's all over on this record. There couldn't have been any more planning and predatory conduct that [Nardini] exhibited from the time that he was being bonded out at the St. Clair County Jail, until the time he decided to snatch [LN] and head to Ohio. That was just pre-offense planning after planning after planning. OV 10 will remain at 15.

Nardini did not challenge the other sentencing variables.

At sentencing, Patricia noted that LN suffered from night terrors and woke up in the middle of the night crying. She stated, "I suspected that there would be some trauma that we would have to work through." It was recommended LN enroll in counseling. Patricia stated, "There was other health issues that had to be worked through. And as we worked through those, she has gotten a lot better. So it is a recommendation [counseling] and it is something that we have an office in mind." Patricia opined that LN's emotional issues and night terrors resulted from the kidnapping. She reiterated that a professional recommendation was made to provide counseling to LN.

Based on this testimony, the trial court revisited OV 4:

> It has been scored by the Department of Corrections at 10 points, which requires a finding of serious psychological injury requiring treatment, even though treatment has not yet been sought.

> The statement that has been made by Patricia [] as it relates to [LN], is consistent with my way of thinking that there is some psychological trauma that is of a serious nature, and it [is] such that it prompted her to seek out some assistance after [LN] was placed into her custody. Had she not been experiencing any of those emotional issues, there would be no reason for the seeking out of that treatment and then the recommendation for treatment being made, I think sufficient facts exist to score OV 4 at ten. It will so remain.

As stated, the trial court sentenced Nardini to 20 to 60 years' imprisonment for kidnapping, and two to six years' imprisonment for absconding or forfeiting bond. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Nardini argues that the prosecution presented insufficient evidence to sustain his kidnapping conviction. We disagree.

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "In analyzing these sufficiency claims, this Court must review the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Powell*, 278 Mich App 318, 320; 750 NW2d 607 (2008) (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"A challenge to the sufficiency of evidence underpinning a conviction implicates due process." *People v Darga*, ___ Mich App ___, ___; ___NW3d ___ (2023) (Docket No. 363178); slip op at 6. "Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt." *People v Tombs*, 260 Mich App 201, 206-207; 679 NW2d 77 (2003). This Court recently reiterated the law regarding a challenge to the sufficiency of the evidence:

> In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. All conflicts in the evidence must be resolved in favor of the prosecution. [*People v Johnson*, 340 Mich App 531, 548; 986 NW2d 672 (2022) (quotation marks and citation omitted).]

Nardini was convicted of kidnapping under MCL 750.349, which provides:

(1) A person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to do 1 or more of the following:

* * *

(d) Take that person outside of this state.

In other words, the kidnapping charge had two elements: (1) knowing restraint, and (2) intent to take a person out of the state. See *id.* See also M Crim JI 19.1.

The kidnapping statute specifically defines "restraint." MCL 750.349(2) defines "restraint" as

> to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

"Where, as here, a statute supplies its own glossary, courts may not import any other interpretation, but must apply the meaning of the terms as expressly defined." *People v Williams*, 288 Mich App 67, 74; 792 NW2d 384 (2010) (quotation marks and citation omitted). Therefore, regarding the element of restraint, the prosecution only needed to present evidence that Nardini restricted LN's movements or confined her such that he interfered with her liberty without legal authority.

On appeal, Nardini focuses his sufficiency-of-the-evidence argument on the element of restraint. The prosecution satisfied this element. Patricia stated that on January 9, 2023, while Nardini was still incarcerated, she went to her attorney to seek an ex parte order for LN's return. The ex parte order provided, "Ex-parte Order for Minor Child to be Returned to the Plaintiff's Care Until Further Order of the Court." The order was served on Nardini in jail before his release. So, when Nardini took LN, he did so without legal authority, satisfying part of the statutory definition of "restraint," i.e., without lawful authority.

If that were not enough, Nardini's own testimony provided evidence of restraint. At trial Nardini stated that he took control of LN at a fast food restaurant, put her in her car seat, and buckled her in. When asked if LN was free to leave, Nardini replied "[s]he was buckled in her car seat." "Yeah. I'm sure she was buckled in." When the prosecution asked Nardini, "You weren't going to let her wander off out of that car seat and start walking down the road, were you?" Nardini replied, "Absolutely not." In short, he intended to take LN wherever he wanted, "no matter what LN would have said . . . [.]" These actions meet the statutory definition of restraint because LN's movements were restricted and she was confined.

Further, police found and arrested Nardini outside of the state of Michigan. During his arrest, he admitted to taking LN outside of the state, thus satisfying the relevant remaining element of kidnapping. See MCL 750.349(1)(d). Therefore, Nardini cannot establish that there was insufficient evidence underpinning his kidnapping conviction. Drawing all reasonable inferences in favor of the prosecution, a reasonable jury would find the elements satisfied.

## III. GREAT WEIGHT OF THE EVIDENCE

Nardini also argues that his kidnapping conviction was against the great weight of the evidence. Though Nardini framed the issue in relation to the great weight of the evidence, his actual argument is twofold. First, he again argues that the evidence of his guilt, specifically evidence that he restrained LN, was insufficient. Second, he argues that the prosecution abused

its power when it charged him with kidnapping rather than parental taking.[3] We disagree that evidence of restraint was lacking, and we conclude that his argument regarding the prosecution's charging decision is waived, see MCR 7.212(C)(5); *People v Mackle*, 241 Mich App 583, 604 n 4; 617 NW2d 339 (2000) (An issue not contained in the statement of questions presented is waived on appeal.).[4]

"To preserve a great-weight claim, a party must move for a new trial in the trial court." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Nardini moved for a directed verdict, not a new trial, resulting in this issue being unpreserved.

This Court reviews Nardini's unpreserved "great-weight argument for plain error affecting his substantial rights." *Cameron*, 291 Mich App at 618. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750,

---

[3] At oral argument, Nardini's counsel confirmed this was the nature of his argument.

[4] Nardini did not specifically raise this issue in the statement of the question presented, so it is waived. Even if this issue were not waived, Nardini's argument regarding prosecutorial discretion would fail on the merits. We review prosecutorial charging decisions for an abuse of power. See *People v Barksdale*, 219 Mich App 484, 488; 556 NW2d 521 (1996). An abuse of power occurs "only if a choice is made for reasons that are unconstitutional, illegal, or ultra vires." *Id*. (quotation marks and citation omitted). Nardini's specific argument would fail for two reasons. First, in general terms, "It is well settled that the decision whether to bring a charge and what charge to bring lies in the discretion of the prosecutor." *People v Conat*, 238 Mich App 134, 149; 605 NW2d 49 (1999) (quotation marks and citation omitted). "The prosecutor has discretion to bring any charges supported by the evidence." *People v Nichols*, 262 Mich App 408, 415; 686 NW2d 502 (2004). "If warranted by the facts, the prosecutor has the discretion to proceed under any applicable statute." *People v Yeoman*, 218 Mich App 406, 414; 554 NW2d 577 (1996). As a result, "judicial review of the exercise of that discretion is limited to whether an abuse of power occurred, i.e., whether the charging decision was made for reasons that are unconstitutional, illegal, or ultra vires." *Conat*, 238 Mich App at 149. The facts do not support Nardini's contention that the prosecution abused its power. As discussed, the record supports Nardini's kidnapping conviction because he restrained LN and took her out of Michigan. As a result, the prosecution had "discretion to proceed under any applicable statute." *Yeoman*, 218 Mich App at 414.

Second, Nardini's kidnapping charge had different elements than parental taking, MCL 750.350a, the alternative charge he argues the prosecution should have pursued. Compare MCL 750.349 and M Crim JI 19.1 (requiring proof of (1) restraint and (2) intent to take the person out of the state) with MCL 750.350a and M Crim JI 19.6 (requiring proof of (1) taking or keeping a child for more than 24 hours and (2) intent to conceal the child from the parent or legal guardian). It is well established that when a specific offense charged did not necessarily involve the same elements as a more general statutory prohibition, the specific criminal statute will not preclude the prosecution or conviction under the more general statute. See *People v Ford*, 417 Mich 66, 79-80; 331 NW2d 878 (1982). Because kidnapping has different elements than parental taking, there is no abuse of discretion.

-6-

763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

"A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Evans*, 335 Mich App 76, 87; 966 NW2d 402 (2020) (quotation marks and citation omitted). "Generally, a verdict is against the great weight of the evidence only when it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. (quotation marks and citation omitted).

Nardini argues that his kidnapping conviction was against the great weight of the evidence because no evidence was presented that he restrained LN. We disagree. This is essentially a rehash of his insufficiency argument. As discussed above, the prosecution only needed to present evidence that Nardini restricted LN's movements or confined her such that he interfered with her liberty without legal authority. He did. Nardini's actions meet the statutory definition of restraint because LN's movements were restricted and she was confined. He therefore cannot establish plain error regarding his great-weight-of-the-evidence claim.

## IV. SENTENCING GUIDELINES

Nardini argues that the trial court erred when it assessed PRV 5 and OVs 4, 10, and 14. Alternatively, he contends that defense counsel was ineffective for failing to present evidence that his earlier conviction was obtained without counsel, and for failing to object to the scoring of OV 14. We disagree.

"To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) (quotation marks and citations omitted). Nardini objected to OVs 4 and 10 at sentencing, preserving these challenges for appeal. *Id*. Nardini objected to PRV 5, however, his challenge related to whether his 2019 guilty plea for jostling amounted to an offense against a person. On appeal, Nardini argues that the trial court erred in its assessment of PRV 5 because it was unclear whether he was represented by counsel for the 2019 plea. Because Nardini raises a different sentencing issue on appeal, his challenge to PRV 5 is unpreserved.

After these challenges, defense counsel stated, "[n]o additional guideline challenges, Judge." As a result, Nardini's challenge to OV 14 is unpreserved and arguably construed as forfeited. This Court has held "such circumstances . . . constitute forfeiture and not waiver of alleged scoring errors." *People v McChester*, 310 Mich App 354, 357; 873 NW2d 646 (2015).

A claim for ineffective assistance of counsel is preserved by moving for a new trial or for a *Ginther*[5] hearing. See *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). A defendant can also preserve this issue "by filing in this Court a motion for remand to the trial court for a *Ginther* hearing." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

---

[5] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

Nardini did not take these steps, resulting in his claim for ineffective assistance of counsel being unpreserved.

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded in part by statute as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019).]

"Unpreserved sentencing errors are reviewed for plain error affecting substantial rights." *People v Meshell*, 265 Mich App 616, 638; 696 NW2d 754 (2005). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v White*, 331 Mich App 144, 150; 951 NW2d 106 (2020) (quotation marks and citation omitted). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *Id.* "Clear error occurs 'if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made.' " *People v Duha*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363115); slip op at 3 n 3 (citation omitted). However, "[w]here claims of ineffective assistance of counsel have not been preserved, [this Court's] review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

## A. PRV 5

First, Nardini argues that PRV 5 was incorrectly assigned five points because it was unknown whether he was represented by counsel during his 2019 plea for jostling. We disagree.

A trial court scores PRV 5 for prior misdemeanor convictions. See MCL 777.55(1). It assigns five points if the "offender has 2 prior misdemeanor convictions . . . ." MCL 777.55(1)(d). But a trial court's assessment of PRVs cannot include a conviction which violated a defendant's right to counsel. See *US v Tucker*, 404 US 443, 449; 92 S Ct 589; 30 L Ed 2d 592 (1972); *Gideon v Wainwright*, 372 US 335, 342; 83 S Ct 792; 9 L Ed 2d 799 (1963) (under the Fourteenth Amendment, criminal defendants in state court have a Sixth Amendment right to counsel). Our Supreme Court has held sentencing courts may not enhance a defendant's sentence by using previous misdemeanor convictions if the defendant had a "right to appointed counsel . . ." unless the defendant was represented by counsel, or waived counsel for the earlier conviction. *People v Reichenbach*, 459 Mich 109, 125-127; 587 NW2d 1 (1998). If a sentencing court uses an earlier conviction obtained in violation of a defendant's right to counsel, the defendant is permitted to collaterally attack that conviction. *People v Carpentier*, 446 Mich 19, 29-30; 521 NW2d 195 (1994). "Collateral attacks encompass those challenges raised other than by initial appeal of the conviction in question." *People v Ingram*, 439 Mich 288, 291 n 1; 484 NW2d 241 (1992).

"A defendant who collaterally challenges a prior conviction bears the initial burden of establishing that the conviction was obtained without counsel or a proper waiver of counsel." *People v Love*, 214 Mich App 296, 299; 542 NW2d 374 (1995). "A defendant can satisfy this initial burden in one of two ways. First, the defendant can present "prima facie proof . . . such as a docket entry showing the absence of counsel or a transcript evidencing the same." *Id*. at 299 (quotation marks and citations omitted; alteration in original). "Second, a defendant can present evidence that he requested such records from the sentencing court and that the court either (a) failed to reply to the request, or (b) refused to furnish copies of the records, within a reasonable time." *Id*. at 299-300 (quotation marks and citations omitted). "Once either approach is satisfied, a hearing will be convened at which the burden [would] then be upon the prosecutor to establish the constitutional validity of the prior conviction." *Id*. at 300 (quotation marks and citations omitted; alteration in original).

Nardini failed to properly establish that his 2019 plea was entered in violation of his right to counsel. Nardini pleaded no contest to domestic violence in 2008. He pleaded guilty to jostling in 2019. Nardini was represented by counsel during his domestic violence plea. But, at the time of sentencing, it was unclear whether he had counsel for the 2019 jostling plea. Nardini's presentence investigation report (PSIR) stated that it was unknown whether an attorney was present. It is difficult to determine from this information whether Nardini waived his right to counsel, or whether counsel had in fact been appointed.[6] Indeed, "absence of evidence is not evidence of absence." *People v Moses*, unpublished per curiam opinion of the Court of Appeals, issued February 26, 2019 (Docket No. 340747), p 5 (quotation marks and citation omitted).[7] Even if Nardini was not represented by counsel, his PSIR states he was sentenced to pay fines and costs. Our Supreme Court has held, "[t]he right to appointed counsel obtains *only* if actual imprisonment is imposed . . . ." *Reichenbach*, 459 Mich at 126 (emphasis added). The 2019 conviction did not result in actual imprisonment. As a result, Nardini did not have a right to counsel and the trial court did not commit plain error when it assessed five points for PRV 5.

Nardini's argument that defense counsel was ineffective for failing to present prima facie proof that Nardini lacked counsel during his jostling plea lacks merit. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Even if defense counsel had presented prima facie proof, it would have been futile because Nardini was not entitled to counsel during the 2019 plea. Because no "errors [are] apparent on the record[,]" *Matuszak*, 263 Mich App at 48, defense counsel was not ineffective and we affirm.

B. OV 4

---

[6] We observe that the prosecution has proffered evidence that he was in fact represented by counsel related to the jostling plea.

[7] "Unpublished decisions are not binding on this Court, but the Court may consider them for their persuasive value." *People v Otto*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362161); slip op at 12 n 11.

-9-

Next, Nardini argues the trial court incorrectly assigned 10 points to OV 4. We disagree.

OV 4 is scored for "psychological injury to a victim." MCL 777.34(1). Specifically, 10 points are assigned if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). "In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2). Our Supreme Court has held

> points for OV 4 may not be assessed solely on the basis of a trial court's conclusion that a "serious psychological injury" would normally occur as a result of the crime perpetrated against the victim and . . . evidence of fear while a crime is being committed, *by itself*, is insufficient to assess points for OV 4. [*People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017).]

"Whether the victim has sought treatment does not determine whether the injury may require professional treatment." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). "The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *Id*.

At Nardini's sentencing, Patricia noted that LN suffered from night terrors and woke up in the middle of the night crying. She stated, "I suspected that there would be some trauma that we would have to work through." Patricia also indicated that there was a recommendation for LN to receive counseling, stating, "There was other health issues that had to be worked through. And as we worked through those, she has gotten a lot better. So it is a recommendation [counseling] and it is something that we have an office in mind." Patricia opined that LN's emotional issues and night terrors resulted from the kidnapping. She reiterated that she received a professional recommendation to provide counseling to LN. This is sufficient to trigger 10 points under OV 4 related to LN.

Alternatively, there was sufficient evidence to trigger 10 points under OV 4 for Patricia. OV 4 is scored for "psychological injury to *a* victim." MCL 777.34(1) (emphasis added). Regarding Patricia, the PSIR stated "due to the [sentencing] offense, she is suffering from anxiety and depression and is currently working with her doctor to deal with these issues and may need counseling in the future." We have previously held that "[i]t is presumed that unchallenged information in the PSIR is accurate, and a judge is entitled to rely on the information unless a defendant raises an effective challenge." *People v Maben*, 313 Mich App 545, 553; 884 NW2d 314 (2015). The record provides sufficient evidence to support the trial court's finding that Patricia and LN suffered psychological injury. LN and Patricia were recommended for professional treatment. The trial court, therefore, did not err when it assigned 10 points to OV 4.

### C. OV 10

Next, Nardini argues the trial court erred when it assigned 15 points to OV 10. We disagree.

OV 10 is scored for "exploitation of a vulnerable victim." MCL 777.40(1). A trial court must assign 15 points if "[p]redatory conduct was involved . . . ." MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of

victimization." MCL 777.40(3)(a). Our Supreme Court identified the following questions to assist trial courts in determining whether OV 10 should be assigned 15 points:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008).]

It further explained that predatory conduct "does not encompass any preoffense conduct, but rather only those forms of preoffense conduct that are commonly understood as being predatory in nature." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011). For example, "lying in wait and stalking" would be included, but "purely opportunistic criminal conduct" or "run-of-the-mill planning to effect a crime" would not. *Id*.

Nardini's conduct falls into the first category, thereby triggering the enhancement. There was evidence that he repeatedly threatened to harm Patricia if she did not sign the letter giving him full custody of LN. Nardini controlled Patricia's relationship with LN and hid LN from her. His incarceration immediately before the events of this case also stemmed from a violent interaction with Patricia.

Further, after his January 2023 arrest, Nardini took extreme steps to keep Patricia from getting LN. He called Hunsanger from jail and "told [her] not to give [LN] to her mother." Further, MSP contacted Hunsanger and informed her of the need to return LN to Patricia. When Hunsanger told Nardini about the police, he told Hunsanger not to return her. Hunsanger testified, "He told me to take [LN] to my niece's house." Nardini directed Hunsanger to keep LN hidden, and Hunsanger followed his instructions. Hunsanger then drove LN to the St. Clair County Jail parking lot. She received a phone call from a different inmate. Nardini instructed the other inmate to tell Hunsanger "to leave the police department there and go to a Walmart or to a McDonald's." Hunsanger brought LN to a Burger King. Nardini called and told her "a big issue" had arisen. He "told [her] to turn off [her] phone." After involving friends and neighbors, Nardini borrowed a friend's vehicle, took LN, and drove to Ohio after leaving his phone behind to avoid detection.

The record supports the trial court's finding that Nardini engaged in conduct before the offense directed at LN who was vulnerable because of her age. Further, LN's kidnapping was the primary purpose of this conduct. *Cannon*, 481 Mich at 162. Based on these facts, the trial court did not err when it assigned 15 points to OV 10 and we affirm.

### D. OV 14

Lastly, Nardini argues the trial court erred when it assigned 10 points to OV 14. We again disagree.

OV 14 is scored for the "offender's role." MCL 777.44(1). When assessing, 10 points are assigned when "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a).

This Court has held: "To 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Rhodes*, 305 Mich App 85, 90; 849 NW2d 417 (2014).

Nardini's direction of Hunsanger's conduct satisfied the requirement for 10 points under OV 14. For her involvement in LN's kidnapping, Hunsanger was charged as an accessory after the fact, to which she pleaded guilty. Nardini suggests, because Hunsanger was not charged specifically with kidnapping, she "was an unwitting participant at most." He contends that he cannot be the leader of a multiple offender situation. We disagree.

Nardini's argument relies on *People v Johnston*, 478 Mich 903; 732 NW2d 531 (2007), but this reliance is misplaced. In *Johnston*, the trial court scored the defendant's OVs 1, 2, and 3 "identically to the scores given to his codefendants because each of these variables directs that for multiple offender cases, if one offender is assessed points under the variable, all offenders shall be assessed the same number of points." *Id*. at 904 (quotation marks and citation omitted). Our Supreme Court held: "[The] defendant was the only offender convicted of larceny from the person and conspiracy to commit larceny from the person. Thus, his was not a multiple offender case for either of these crimes." *Id*. (quotation marks omitted). In terms of these OVs: "In multiple offender *cases*, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points." MCL 777.31(2)(b); MCL 777.32(2) (emphasis added). Nardini argues that because he and Hunsanger were convicted of different crimes, the incident did not involve multiple offenders. We are not persuaded. Although Hunsanger was convicted of another crime, the high-confidence evidence in the record, including Hunsanger's own testimony would have been sufficient to establish her culpability for aiding and abetting the kidnapping. Put simply, Nardini could not have accomplished it without Hunsanger's involvement. More specifically, he could not have accomplished it without Hunsanger following his direction.

Trial courts assign 10 points under OV 14 when "[t]he offender was a leader in a multiple offender *situation*." MCL 777.44(1)(a) (emphasis added). "A multiple offender situation is one in which more than one person—up to several or many persons—participates in a violation of the law." *People v Ackah-Essien*, 311 Mich App 13, 38; 874 NW2d 172 (2015) (quotation marks omitted). "The words of the statute provide the best evidence of legislative intent and the policy choices made by the Legislature." *People v Harris*, 499 Mich 332, 345; 885 NW2d 832 (2016). The OVs addressed in *Johnston* refer to multiple offender *cases*. A *situation* refers "to circumstances . . . ." *Black's Law Dictionary* (9th ed), p 1513. A *case* is a "criminal proceeding . . . ." *Black's Law Dictionary* (9th ed), p 243. As a result, *Johnston's* holding applies when there are multiple offenders in a criminal proceeding. In that situation, the trial court erred when it assessed the same number of points for all offenders in terms of OVs 1, 2, and 3 because the offenders were convicted of different crimes. *Johnston*, 478 Mich at 904. In this matter, the record overwhelmingly supports the trial court's finding that Nardini and Hunsanger "participate[d] in [a] violation of the law." *Ackah-Essien*, 311 Mich App at 38. In other words, they did so during the same circumstances involving LN's kidnapping. Because this was a multiple offender *situation*, the trial court did not err when it assigned 10 points to OV 14.

By extension, Nardini's argument that defense counsel was ineffective for failing to object to OV 14 lacks merit. "Failing to advance a meritless argument or raise a futile objection does not

constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201. Even if defense counsel had objected, it would have been futile. Because no "errors [are] apparent on the record[,]" *Matuszak*, 263 Mich App at 48, defense counsel was not ineffective and we affirm.

## V. CONCLUSION

For the reasons previously discussed, we affirm.

/s/ Noah P. Hood
/s/ Thomas C. Cameron